**Jeffrey M. GALEN, Plaintiff,**

v.

**COUNTY OF LOS ANGELES; Los Angeles County Sheriff's Department; Sergeant Anna Cally Barrier; Detective Marian Holland, Defendants.**

**No. CCV 02–8115 DSF.**

United States District Court,
C.D. California.

Jan. 9, 2004.

Alan S. Gutman, Elizabeth L. Bradley, Law Offices of Alan S. Gutman, Beverly Hills, CA, for Plaintiff.

John J. Collins, Tomas A. Guterres, Douglas Fee and Catherine C. Mason, Collins, Collins, Muir & Stewart, LLP, South Pasadena, CA, for Defendants.

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

FISCHER, District Judge.

### I. PROCEDURAL HISTORY

This case arises out of the arrest of Plaintiff Jeffrey Galen ("Galen") on October 26, 2001 for a violation of Penal Code section 273.5. Galen posted bail in the amount of $1,000,000, and was released.

Galen's two count complaint for civil rights violations filed October 21, 2002, named as defendants the County of Los Angeles, the Los Angeles County Sheriff's Department, Sergeant Anna Calley Barrier, and Detective Marian Holland. Defendants moved to dismiss all claims. The motion was granted with leave to amend as to the allegations of violations of Galen's rights under the Fourth, Fifth and Fourteenth Amendments. (Galen did not amend.) The motion was denied as to Galen's claim of a violation of his Eighth Amendment right to be free from excessive bail. Defendants County of Los Angeles and Sergeant Barrier answered the complaint on January 22, 2003.

Galen's motion for leave to amend the complaint to add Deputy Glen T. Heinrich was granted on April 9, 2003. Defendants' Answer to Plaintiff's First Amended Complaint was filed May 14, 2003 on behalf of the County of Los Angeles, Sergeant Barrier, and Deputy Heinrich.

Defendants' Notice of Motion for Summary Judgment ("Motion") and accompanying Separate Statement of Undisputed Facts were filed October 23, 2003. An Amended Notice of Motion and an Index of Exhibits were filed October 28, 2003. The Declaration of Catherine C. Mason was filed October 31, 2003. Galen's Memorandum of Points and Authorities in Opposition to Defendants' Motion for Summary Judgment ("Opp."), Objections to Evidence Submitted in Support of Motion for Summary Judgment, Statement of Genuine Issues in Opposition to Motion for Summary Judgment, and Declaration of Alan S. Gutman were filed November 3, 2003. Defendants' Reply, Separate Statement of Undisputed Facts and Reply to Statement of Genuine Issues, Reply to Plaintiff's Objections to Evidence Submitted in Support of Motion for Summary Judgment and Declaration of Catherine C. Mason were filed November 10, 2003. On November 24 Galen filed his Objections to the "Supplemental Declaration of Catherine Mason re: Authentication of Exhibits."

The matter was set to be heard November 17, 2003. On November 10, 2003, this matter was transferred to this Court's calendar, and the matter was taken under submission subject to being re-set for hearing. The matter was re-set for hearing on December 22, 2003. On December 18 defendants filed a [Proposed] Supplemental Separate Statement of Undisputed Facts in Support of Defendants' Motion for Summary Judgment, along with an *ex parte* application for permission to file it. Galen opposes the filing. The Court denies the *ex parte* application. The information could have been submitted earlier by way of a declaration, and, as described below, is of no consequence in any event.

At the hearing on December 22, plaintiff's counsel requested leave to file additional authorities. On December 29, 2003, plaintiff filed "Plaintiff's Supplemental Points and Authorities in Opposition to Defendants' Motion for Summary Judgment."

The Court finds that no reasonable factfinder could, considering the evidence presented by Galen and the reasonable inferences to be drawn from that evidence, find in favor of Galen. The Court now GRANTS the motion as to all defendants. Judgment shall be entered accordingly.

## II. LEGAL STANDARD

Summary judgment is proper only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the moving party satisfies the burden, the party opposing the motion must set forth specific facts showing that there remains a genuine issue for trial. *See id.;* FED. R. CIV. P. 56(e).

A non-moving party who bears the burden of proof at trial as to an element essential to its case must make a showing sufficient to establish a genuine dispute of fact with respect to the existence of that element of the case or be subject to summary judgment. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Such an issue of fact is a genuine issue if it reasonably can be resolved in favor of either party. *See Anderson,* 477 U.S. at 250–51, 106 S.Ct. 2505. The non-movant's burden to demonstrate a genuine issue of material fact increases when the factual context renders the claim implausible. *See Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Thus, mere disagreement or the bald assertion that a genuine issue of material fact exists no longer precludes the use of summary judgment. *See Harper v. Wallingford,* 877 F.2d 728 (9th Cir.1989); *California Architectural Building Products., Inc. v. Franciscan Ceramics, Inc.,* 818 F.2d 1466, 1468 (9th Cir.1987).

If the moving party seeks summary judgment on a claim or defense on which he bears the burden of proof at trial, he must satisfy his burden by showing affirmative, admissible evidence. *See Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.,* 896 F.2d 1542, 1550 (9th Cir. 1989).

## III. FACTUAL BACKGROUND

On October 26, 2001 Los Angeles County Sheriff's Department Deputies Bausmith and Heinrich arrested Galen for a violation of California Penal Code section 273.5, commonly referred to as "spousal or cohabitant abuse" or, simply, "domestic violence." Sergeant Barrier approved the arrest. ¶ 37.[1] The alleged victim was Gal-

---

1. The facts in this portion of the Order are taken from Defendants' Separate Statement of Undisputed Facts and Defendants' Reply to Statement of Genuine Issues filed November 10, and are referred to by paragraph number only. The Court, after considering the alleged support for the facts, the alleged evidence rebutting the facts, the objections asserted and the information in Galen's responses ("Response") and defendants' reply to Galen's "genuine issues" ("Reply"), finds these facts to be uncontroverted. To the extent objections were made to the facts found here, the objections are overruled. In some cases the Court has deemed to be true for the purpose of this Motion, facts as stated in Galen's responses to defendants' "undisputed facts."

en's then-fiancee Karen Joy Jacobs ("Jacobs"). ¶ 98.

At 1:43 p.m. on October 26 Los Angeles Superior Court Judge James Albracht found there had been probable cause to arrest Galen based on a Probable Cause Declaration ("PCD") presented by Heinrich. ¶ 41. Defendants contend, and Galen disputes, that Heinrich prepared the PCD. The identity of the person or persons who prepared the PCD or supplied the information in it, and the precise manner of its preparation, is irrelevant, as there is no allegation that probable cause did not exist or that there were improprieties in the preparation of the PCD.[2]

The Felony Bail Schedule for Los Angeles County provides that bail for persons arrested without a warrant for a violation of Penal Code section 273.5 shall be set initially at $50,000. ¶ 61, Ex. 12.

The County of Los Angeles maintained a Los Angeles Station Jail Manual ("Manual") providing *inter alia,* that: (1) a peace officer has a responsibility to inform each prisoner of his right to seek an O.R. release or bail reduction; (2) a peace officer is required to fill out and explain to the arrestee the Bail Reduction Form; (3) a peace officer seeking a bail enhancement must do so through the Bail Deviation Program; and (4) certain information **including the charge** must be provided. ¶¶ 56—60, Ex. 11. A comparison of the Manual and Penal Code section 810 establishes that the County's policies comply with the law as stated in that section. Nothing in the Manual contradicts or controverts any provision of Penal Code section 1269c.

Heinrich indicated on the Bail Deviation Form that the offense was likely to continue and that the victim required medical treatment. ¶ 62, Ex. 7. Heinrich's statement that the "injury to the victim required medical treatment" was just a guess based on the urgency of the arrest. Reply to ¶ 68. Heinrich testified that he concluded that the crime was likely to continue without any factual basis other than the information contained in the PCD. Reply to ¶ 70. (Bausmith testified he instructed Heinrich to write this based on Bausmith's concern for Jacobs' safety and the severity of her injuries, ¶ 116, though the source of this conclusion is irrelevant.) Heinrich did not know who the victim was. ¶ 71. Heinrich's request that bail be increased to $1,000,000 was based solely on what Deputy Bausmith told him. ¶ 74. (Bausmith's assertions of his mental state in reaching this amount, ¶¶ 117—119, are irrelevant.) Heinrich did not complete a "probable cause declaration" for the requested bail increase separate from the PCD. ¶ 75.

Heinrich requested a bail increase to insure the safety of the victim. ¶ 39. (Galen presents no contrary evidence other than the fact that Heinrich did not know the identity of the victim. Obviously a law enforcement officer need not know the identity of the victim to fear for her safety. Heinrich knew the victim had a relationship with Galen—or the crime would not have been a violation of Section 273.5. Galen's objections are overruled.)

Sergeant Barrier knew there had been previous problems between Galen and Jacobs. ¶¶ 8—12. Barrier wanted bail set in an amount high enough that Galen would not be able to bail out. ¶¶ 77—78. Barrier believed bail should be enhanced to $1,000,000 because the PCD stated the victim was in fear for her safety. She believed $50,000 was inadequate because

---

**2.** Many of the "facts" asserted by defendants as "undisputed," or identified by Galen as "genuine issues" simply are not relevant to the determination of this motion, and the Court makes no findings as to them.

Galen was an attorney, lived in a fairly nice house and could probably easily afford $50,000 for bail. ¶¶ 79—81. Barrier's concern was that Galen could have gone out and caused some further physical harm. ¶ 83. (Bausmith's similar concerns of the danger to Jacobs and her children—or even an alleged flight risk, ¶¶ 111, 112, 113, 118, 119—add nothing to the Court's analysis.) Barrier had never previously sought a bail enhancement for a violation of Section 273.5. ¶ 82. (That Bausmith often requested increases, ¶ 114, is irrelevant.)

Heinrich did not contact the bail commissioner directly. Response to ¶ 40. Rather, Heinrich spoke to a senior aide at the Bail Deviation Unit. ¶ 40. He told the senior aide Galen's name and booking number, the criminal charge, the amount of the scheduled bail, the amount requested, the date and time of arrest and the circumstances, and the reasons for the increase, i.e., that the victim was in fear for her safety, that the victim was vague with investigating deputies, and that plaintiff was an attorney and could easily post $50,000 bail. ¶ 40. Heinrich provided to the Bail Deviation Unit a copy of the PCD, but *not* the Bail Deviation Form. ¶ 42. The Bail Deviation Form was not otherwise provided to the Bail Deviation Unit or the bail commissioner. ¶ 42. The documents presented to the senior aide stated Galen was *not* a flight risk. ¶ 39, Ex. 8. (Considering this, Bausmith's concern that Galen might not show up for court, ¶ 119, was not conveyed to and obviously had no impact on the bail commissioner.) Heinrich has no independent knowledge of any facts that were conveyed to the bail commissioner. Response to ¶ 40. (In fact, the parties concede that there is no evidence

establishing precisely what information was actually provided to the bail commissioner by the senior aide.)

Galen's bail was set in the amount of $1,000,000 by Commissioner (now Judge) Kelvin Filer at noon on October 26, 2001. ¶ 44. No one other than a judicial officer of the Superior Court is authorized to increase or reduce bail.[3] ¶ 45; Penal Code § 1269c and other relevant portions of the California Penal Code. Supervisor D. English of the Bail Deviation Unit sent a teletype confirming the bail enhancement to the Watch Commander of the Lost Hills station. ¶ 44, Ex. 16. Galen was able to afford bail in that amount and posted bail several hours after it was set. Response to ¶ 38. Galen did not request reduction of bail at any time while he was in custody. ¶ 43. Galen was advised of his right to seek a reduction in bail when he was provided with the Bail Deviation Form. ¶ 38, Ex. 7. He had already "secured" bail of $1,000,000 at that time. Response to ¶ 38. He obtained bail by paying $50,000 to post a bond. First Amended Complaint at ¶¶ 12 and 13. While not explicitly stated, it is apparent Galen never requested a reduction at any time, not did he otherwise challenge the amount of the bail except by filing this suit.

After Galen was released, he contacted Jacobs. Jacobs signed a "Victim's Request Not to Prosecute" at Galen's urging and request. ¶ 67. No charges were filed.

## IV. DISCUSSION

In their Motion defendants contend: (1) Galen cannot establish defendants' conduct caused a deprivation of his constitutional rights; (2) Heinrich's request for an enhancement in Galen's bail did not consti-

---

3. Pursuant to Penal Code section 1270.1, bail for a violation of Penal Code section 273.5 cannot be reduced *or increased* from the amount set forth in the countywide bail schedule before a hearing in open court. *See Dant v. Superior Court,* 61 Cal.App.4th 380, 71 Cal.Rptr.2d 546 (1998).

tute a violation of the Eighth Amendment; (3) Heinrich and Barrier are entitled to qualified immunity; and (4) the County of Los Angeles does not have a practice, policy or custom allowing law enforcement to violate Penal Code section 1269c.

■ Qualified immunity is an entitlement not to go to trial, not merely a defense from liability. *Saucier v. Katz,* 533 U.S. 194, 200, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). It should be decided early in the proceedings. *Id.* Analysis of the qualified immunity defense is a two step process. The initial inquiry is whether, on the facts alleged, a constitutional right has been violated. If no such right has been violated, plaintiff cannot prevail. 533 U.S. at 200, 201, 121 S.Ct. 2151. If a violation of a constitutional right does or may exist, the Court must consider whether that right was "clearly established." "Clearly established" means the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." 533 U.S. at 201, 121 S.Ct. 2151, citing *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* In other words, "the right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established." *Wilson v. Layne,* 526 U.S. 603, 615, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999).

A. *Galen's Constitutional Rights Were Not Violated Because Bail Was Not "Excessive."*

■ The Eighth Amendment provides all criminal defendants a right to be free from excessive bail. Violation of that right can give rise to a claim under 42 U.S.C. § 1983. *See Wagenmann v. Adams,* 829 F.2d 196 (1st Cir.1987). Galen has the burden of establishing that there is a triable issue of fact as to whether his Eighth Amendment right was violated when bail was set at $1,000,000. Galen argues he has alleged sufficient facts to go to a jury on this issue. This Court disagrees.

Galen's "evidence" that bail was unconstitutionally "excessive" is sparse. *See* Opp. at 3–5. Galen's "Argument" (Opp. at 7–8) does nothing more than state that he has already prevailed on a Rule 12(b)(6) motion on this issue and that "[d]efendants made no attempt to establish that the facts alleged do not show the officers' conduct violated a constitutional right." Galen is wrong on both counts. The Rule 12(b)(6) determination is not dispositive, and defendants have established bail was not excessive.

■ Bail is not excessive simply because the defendant cannot post it. *In Re Burnette,* 35 Cal.App.2d 358, 95 P.2d 684 (1939). Here, however, Galen posted bail in a matter of hours. ¶ 65. Even if Galen disputed the charges, the dispute would be irrelevant when setting bail. For these purposes, the allegations of the criminal complaint (and by analogy the arrest report for pre-complaint setting of bail) are presumed to be true. *E.g., Ex parte Ruef,* 7 Cal.App. 750, 96 P. 24 (1908).

Galen has cited only a single case, *Wagenmann,* in which bail was determined to be excessive. There, the arrestee was charged with disturbing the peace and a traffic violation. There was no concern about flight risk or public safety. The officer allegedly knew exactly how much money the arrestee had available and specifically asked that bail be set $20 higher than that amount. That case provides no assistance here because it did not involve violence or discuss in any detail how it might be determined that bail is excessive

in general, or in any other factual circumstance.

Much of Galen's argument is grounded in the faulty premise that flight risk is the only relevant factor. *See* Opp. at 15: 7–11; ¶¶ 93–101. But it is not even the primary factor. Penal Code § 1275(a). Galen has not provided any case from any jurisdiction discussing how any judicial officer should arrive at a non-excessive bail after considering all relevant factors. Nor has the Court found any case suggesting how a judicial officer should balance and consider the factors mandated by California law when setting bail. (Because "detention" is not a California concept, the Court looked to state law to see if there were any guidance on setting non-excessive bail when public safety is an issue—or in any other context for that matter. Under federal law, "detention" in such a circumstance is a viable and constitutional possibility.)

Safety of the victim (or members of the public in general) is *the primary factor* that judicial officers must consider in setting bail for violations of California law. Penal Code § 1275(a). The alleged injury to the victim is also a mandatory consideration. *Id.* California law also provides that for crimes of domestic violence (among other crimes), judicial officers must consider the danger that may be posed to other persons. The charge itself is one that has received special attention in California law. Penal Code § 1270.1. In *Dant v. Superior Court,* 61 Cal.App.4th 380, 71 Cal.Rptr.2d 546 (1998), the court noted that the overriding purpose of Penal Code section 273.5 (which targets abuse against a specific category of victim) is to deter domestic violence—a crime the California Legislature determined will no longer be tolerated. The court further noted that victims of these crimes are often particularly vulnerable. *Dant,* at 389, 71 Cal.Rptr.2d 546. The judicial officer considering a bail request for such a crime must also consider threats made by the detained person, past acts of violence, and the *ability of the detained person to post bail.* Penal Code § 1270.1(b). Thus, the nature of the injuries, that the injuries were documented by photographs, that there were both older and more recent injuries, including a 7″ laceration, and that the victim feared for her safety were all factors that Commissioner Filer was mandated to consider. Filer was also required to consider that Galen, a local attorney, had the ability easily to post bail—which Galen soon proved. Response to ¶ 38.

Galen's "genuine issues," describing his family situation and lauding his participation in the community, ¶¶ 94–100, provide no assistance. Galen provides no statutory or case law to suggest that these factors eliminate flight risk, or to explain *how* these factors are to be weighed by the judicial officer who sets bail. He provides no authority suggesting that defendants had any obligation to investigate his community ties and present them to the bail commissioner. In fact California law clearly provides the burden is on the criminal defendant to do so. *Van Atta v. Scott,* 27 Cal.3d 424, 166 Cal.Rptr. 149, 613 P.2d 210 (1980). There is no evidence that the bail commissioner did *not* have at least some of this information—only that Heinrich did not provide it. If Galen's contention is that the question of whether bail was excessive should be determined based on *all* relevant facts rather than the facts known to the bail commissioner, then all of the information known to law enforcement at the time also must be considered. Neither side has addressed this issue. If all of the information had been known to the bail commissioner, including the photographs themselves and the information concerning prior incidents, however, it is

even more clear that bail was not excessive.

Galen's only other contention is that $1,000,000 is 2000% more than the $50,000 contained in the Felony Bail Schedule for his offense. But "excessiveness" is not a matter of percentages. The court of appeal found a bail of $1,000,000 for a drug-related offense (not a crime of violence) was not necessarily excessive, though the scheduled amount of bail was only $100,000. *In re Christie*, 92 Cal.App.4th 1105, 112 Cal.Rptr.2d 495 (2001). The court stated that it could not determine whether that amount was excessive because the record made by the trial court was inadequate to determine what that court had considered in making the bail determination.

In any event, $50,000 is the amount law enforcement must use *in the absence of an enhancement or reduction.* It does not bind the judicial officer so long as the court states on the record the reasons for increasing or reducing bail for certain crimes. Penal Code § 1270.1. Galen provides no information concerning how the Bail Schedule amounts are determined, how many defendants find the $50,000 to be the functional equivalent of pretrial detention, how often bail is reduced or enhanced from that amount (or from the other amounts for other charges cited by Galen in comparison) by judicial officers, and under what circumstances.

The bail commissioner was aware of the following facts that he was to accept as true: Galen was charged with numerous injuries to a person with whom he had a close personal relationship; one of the injuries was a seven inch laceration; photographs of the injuries existed and were such that employees of the Sav–On who saw them called the police; the victim was

afraid of Galen; Galen presumably knew how to locate her if he were released; he was an attorney who presumably would be able to post a significant amount of bail.[4] Indeed, the only way to assure Jacobs' safety would have been to deny bail or set it in an amount that Galen could not afford. But California law does not allow the first alternative. Instead, bail was set in an amount that Galen was able to post in a matter of hours. Bail was not excessive.

**B.** *The Constitutional Right Was Not "Clearly Established."*

■ Even if there were a triable issue of fact as to whether $1,000,000 bail was unconstitutionally "excessive," defendants would still prevail on their claim of qualified immunity under the second prong of the *Saucier* analysis. Heinrich and Barrier are entitled to summary judgment on qualified immunity grounds if they can establish as a matter of law that a reasonable officer could have believed that $1,000,000 was not excessive bail—even if they were mistaken. *Saucier*, 533 U.S. at 205, 121 S.Ct. 2151. To put it somewhat differently, and more accurately, their conduct does not violate the law if they did not believe their request would result in excessive bail, even though the request actually did have that result.

In *Wilson*, 526 U.S. 603, 119 S.Ct. 1692, 143 L.Ed.2d 818, for example, police officers invited representatives of the media to accompany them while they executed an arrest warrant in a private home. The Supreme Court held that such a "media ride along" *does* violate the Fourth Amendment, but that because the state of the law on that particular issue (not the broad issue of Fourth Amendment rights)

---

4. There is no evidence concerning what other information the bail commissioner might have received from the senior aide.

was not clearly established at the time the search took place, the officers were entitled to the defense of qualified immunity. "[T]he proper fact-specific inquiry under *Anderson* is not whether the law is settled, but whether, in light of clearly established law and the information available to him, a reasonable person in [defendants'] position could have objectively believed his actions to be proper." *Floyd v. Laws*, 929 F.2d 1390, 1394 (9th Cir.1991), citing *Anderson v. Creighton*, 483 U.S. at 641, 107 S.Ct. 3034.

■ Galen bears the initial burden of proving that the rights allegedly violated by defendants were clearly established at the time of the alleged misconduct. *Davis v. Scherer*, 468 U.S. 183, 197, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984); *Houghton v. South*, 965 F.2d 1532, 1534 (9th Cir.1992). Although law enforcement officers must be aware of constitutional developments, they are not expected to do so to the same extent as law professors, for example. A "reasonable person" standard applies. *Ward v. San Diego County*, 791 F.2d 1329, 1332 (9th Cir.1986), *cert. denied*, 483 U.S. 1020, 107 S.Ct. 3263, 97 L.Ed.2d 762 (1987). But here even a scholar would be hard-pressed to define the parameters of excessive bail. Neither side has presented any statutory or case law that describes how a judicial officer should determine the amount of bail to set, how a judicial officer should balance the factors described as relevant under California law, how to determine the proper amount of bail, or how to determine when bail is excessive. Only in *Wagenmann* is the issue even discussed. Galen has not—and apparently cannot— point to a single case where bail was found to be excessive in vaguely similar circumstances.

Under the facts in this case, it cannot be said that this right is so "clearly established" that a reasonable officer in defendants' position would know they were violating that right in these particular circumstances. Although California law does not allow "pretrial detention" except in a very limited number of circumstances, federal law allows defendants who pose a danger to the public and may present a flight risk to be detained without bail.[5]

*Stack v. Boyle*, 342 U.S. 1, 72 S.Ct. 1, 96 L.Ed. 3 (1951), relied on by Galen to demonstrate a triable issue of fact as to the lack of reasonableness of defendants' conduct, does not assist him. That case was decided before the Bail Reform Act and interpretive law made clear that criminal detainees could be held *without bail* in certain circumstances even where the risk of flight was not great. To the extent *U.S. v. Salerno*, 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) and *U.S. v. Montalvo-Murillo*, 495 U.S. 711, 110 S.Ct. 2072, 109 L.Ed.2d 720 (1990) have any relevance at all it might be to show that if defendants had been familiar with federal case law, they might reasonably have believed that Galen could be held at the functional equivalent of pretrial detention. Defendants could reasonably have believed that Galen posed a threat to Jacobs' safety in view of the fact that a second incident was reported after law enforcement had been involved in a prior incident, and that photographs established Jacobs had significant injuries. It could reasonably be believed that Galen posed a threat to Jacobs that no conditions of release could dispel. Galen's community contacts notwithstanding, a reasonable bail commissioner (or law enforcement officer) could have believed

---

**5.** Galen suggests Heinrich should have requested a "detention hearing," if he believed Galen was dangerous—but provides nothing to suggest that the federal procedure is available under California law. In fact, the bail enhancement procedure used by Heinrich appears to be the California equivalent.

there was a risk that a well-respected attorney and community member would flee rather than face the embarrassment of a domestic violence trial—and possible conviction. (In fact, Bausmith testified that he questioned whether Galen would appear based on his experience that someone who does not want to face charges might become a flight risk. § 119.) Under federal law, that would have allowed Galen to be held without bail. 18 U.S.C. § 3142.

Heinrich and Barrier could reasonably have assumed that obtaining bail that Galen could not post was the constitutional equivalent of pretrial (or at least prearraignment) detention permitted in appropriate circumstances under the United States Constitution. It is difficult to fathom that it is permissible to hold a dangerous criminal *without bail*, but it is unconstitutional to hold a dangerous criminal on bail so high he cannot post it. Even more confusing in this case is the concept that it could be unconstitutional to set bail in an amount that a potentially dangerous defendant could—and did—post in a matter of hours.

In the absence of statutory or case law as guidance as to how bail is set, and knowing from the statutes and the Manual that any request would go through the Probation Department's Bail Deviation Unit that specialized in such requests and would be presented to a bail commissioner whose prime function it was to evaluate requests for increases and reductions based on the facts presented, defendants' conduct cannot be considered unreasonable.

Perhaps most telling in this analysis is the fact that bail was actually set by a bail commissioner of the Los Angeles Superior Court whose function it was to consider requests for increases and reductions in bail. While there is evidence of what was—and what was not—presented to the senior aide, the parties concede there is *no*

*evidence* of what was actually presented to the bail commissioner, or the basis on which he made his decision. Assuming the information provided to the commissioner was not false—much less deliberately falsified, defendants are protected by qualified immunity.

Galen repeatedly asserts that bail was set in an amount 2000% higher than that amount set forth in the bail schedule, and that, therefore, no reasonable officer could have believed that amount was not excessive regardless of the facts. If that were true, then no reasonable bail commissioner could have set bail in that amount regardless of the information Heinrich provided, and there would be no causal connection between the information from Heinrich and the setting of the excessive bail. If the comparative dollar amounts were determinative, clearly the bail commissioner's ruling did not depend on Heinrich's allegedly false comments. But it is widely known that bail is generally posted through surety bonds. Penal Code §§ 1276, *et seq.* By his own admission, Galen was able to obtain his release for a premium of only $50,000. First Amended Complaint at ¶¶ 12 and 13. Galen does not indicate that he was required to post security for the bond. Viewed from that perspective, Galen's bail might be considered relatively moderate.

In any event, Galen presents no evidence to suggest how many defendants charged with similar crimes are able to post bail of $50,000. This was Heinrich's first request for a bail enhancement and Barrier's first for a violation of section 273.5. If defendants had not previously encountered arrestees who were able to post bail of even $50,000, effectively making $50,000 the equivalent of pretrial detention, they would have no reason to believe bail requiring a *premium* of $50,000 would be excessive for a wealthy attorney.

There is nowhere defendants could have looked to determine how to analyze these factors.

Galen lists a number of facts that he contends establish he was not a flight risk. ¶ 90 –100. But Heinrich and Barrier did not contend that he was. ¶ 39, Ex. 8. There is no evidence that Heinrich or Barrier knew any of these facts, and nothing imposing on defendants the obligation to consider them. Criminal defendants and their families have an equal right to seek a bail reduction—certainly without being compelled to reveal to the bail commissioner facts about the dangerous of the offense, the defendant's criminal history, etc. They are no more relevant than other facts concerning the alleged charges that Galen asserts were not known to Heinrich. Even if known to defendants, there is no statute or case law that dictates precisely how these factors should be considered by a judicial officer when setting bail—much less a law enforcement officer asking for an increase.

The law concerning what is unconstitutionally "excessive" in these circumstances is not "clearly established."

### C. Neither Heinrich Nor Barrier Caused Bail To Be "Excessive."

Even if Galen's bail were excessive, defendants are not liable because there was no causal connection between defendants' conduct and the alleged violation. *Kohl v. Casson,* 5 F.3d 1141 (8th Cir.1993) (neither the city, county nor individual defendants could be liable because none of the defendants set plaintiff's bail), citing *City of Canton v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). Where bail is set at the discretion of a judicial officer, law enforcement has no § 1983 liability for excessive bail. *Walden v. Carmack,* 156 F.3d 861, 874 (8th Cir. 1998).

In California only judicial officers have the authority to set bail at an amount above or below that specified in the countywide bail schedules. Thus, Heinrich can be liable only if he provided false information to the bail commissioner which the bail commissioner relied on in setting the allegedly excessive bail. An analysis similar to that described in *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978) applies. *See Mendocino Environmental Center v. Mendocino County,* 14 F.3d 457, 463 (9th Cir.1994); *Hervey v. Estes,* 65 F.3d 784, 789 (9th Cir.1995) (showing necessary to get to a jury in a section 1983 action is the same as the showing necessary to get to an evidentiary hearing under *Franks* ).

In warrant cases, plaintiffs must: (1) point out the specific portion of the affidavit alleged to be false; (2) allege facts tending to show the defendant was aware or should have been aware of the falsity; and (3) allege that the false statements were necessary to a finding of probable cause. *Mendocino,* 14 F.3d at 463. "[A] plaintiff can only survive summary judgment on a defense claim of qualified immunity if the plaintiff can *both* establish a substantial showing of deliberate falsehood or reckless disregard and establish that, without the dishonestly included or omitted information, the magistrate would not have issued the warrant." *Hervey,* 65 F.3d at 789 (emphasis in original). In other words, plaintiff must establish the materiality of the statements to the ultimate determination of probable cause. *Id.* This determination is one for the court, not the jury. *Id.*

### Deputy Glen T. Heinrich

By analogy, Galen can only survive summary judgment if he establishes *both* that Heinrich deliberately lied or was recklessly false *and* that the bail commissioner would have set bail in a lower and non-

excessive amount but for the false representations. Galen has not established either factor. First, Galen has provided no evidence whatever concerning what the commissioner actually relied on—as opposed to what he received from the senior aide. Second, Galen has not made any effort to establish what was provided to the commissioner by the senior aide—as opposed to what was provided to the senior aide by Heinrich. Finally, Galen has made no effort to determine what information may have been provided to the bail commissioner *in addition to* the information allegedly provided by Heinrich. Any additional information might have mitigated Heinrich's submission, contained other and more egregious aggravating factors such that Heinrich's information did little to cause an increase in bail, or might have supported Heinrich's information. Galen simply has failed to meet his burden.

In fact, Galen acknowledges that Heinrich didn't know what information was provided to the bail commissioner. Response to ¶ 40. Assuming Galen provided to the senior aide all the information on the Bail Deviation Unit Information Form (which even Galen disputes, Response to ¶ 40) he still has no liability.

The information provided by Heinrich was not false. It is undisputed that the Bail Deviation Form that stated Jacobs' injuries required medical treatment and that the incident was likely to recur was not provided to the bail commissioner. The only other statements potentially attributable to Heinrich are true, or a reasonable person would have believed them to be true. Jacobs was indeed in fear for her safety and had certainly been vague with deputies. Galen was in fact an attorney and had no apparent problem posting bail of $1,000,000. He certainly could easily have posted $50,000. Under the *Franks* analysis, even if the bail commissioner had

relied on all of Heinrich's statements, Heinrich would have immunity.

### Sergeant Anna Barrier

Barrier did nothing more than agree that a request for an enhancement would be appropriate. Reply to ¶ 77–80. She had no part in determining the amount of the requested enhancement, nor did she even know the amount requested. Reply to ¶ 77—80. She made no representations to the Bail Deviation Unit or the bail commissioner. There can be no causal connection between her mere approval and the alleged setting of excessive bail.

■ Galen makes much of Barrier's objective in approving the request for bail enhancement. But Barrier's objective is not relevant. "[A] defense of qualified immunity may not be rebutted by evidence that the defendant's conduct was malicious or otherwise improperly motivated. Evidence concerning the defendant's subjective intent is simply irrelevant to that defense." *Crawford–El v. Britton,* 523 U.S. 574, 588, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998).

Even if Barrier's motive were relevant and her participation greater, she would still be entitled to qualified immunity for the reasons previously described. Barrier's concern for the victim's safety was completely consistent with California law. Moreover, the information in her possession was based on discussions with the victim, investigations of two different law enforcement agencies involving two different incidents, and actual photographs of extensive bruising to the victim. Barrier had ample information to suggest that a request for a bail enhancement was proper.

### D. *County of Los Angeles*

■ The County of Los Angeles has no liability in the absence of a policy, custom or practice that was the "moving force of the constitutional violation." *Monell v.*

*Department of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In other words, there must be a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation," before municipal liability can be found. *Canton,* 489 U.S. at 385, 109 S.Ct. 1197. Again in *Board of County Commissioners of Bryan County v. Brown,* 520 U.S. 397, 404, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997) the Supreme Court held:

> [I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the "moving force" behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights. [Emphasis in original.]

 Though this issue would generally be decided by a jury, where the causal link is sufficiently tenuous, the matter can appropriately be determined by way of summary judgment. *See Bielevicz v. Dubinon,* 915 F.2d 845, 850 (3d Cir.1990). This is such a case.

 Galen cannot meet his burden at trial. Galen has provided no evidence of a policy, custom or practice that has either the purpose of encouraging Los Angeles Superior Court judicial officers to set excessive bail or the effect of causing that result. In the absence of such a policy, practice or custom, the County is not liable.

Galen attempts to make much of the alleged "violation" of Penal Code section 1269c. Contrary to Galen's contention, nothing in that section suggests that the PCD cannot be the same document presented to the bail commissioner in support of a request for an increase in bail. In fact, where there are no additional facts relevant to the issue, it would be a waste of scarce law enforcement resources to require a separate document to be prepared. Moreover, considering that law enforcement has only eight hours after defendant is booked in which to seek *and obtain* an increase in bail before the defendant must be released on the amount set forth in the countywide schedule, Penal Code § 1269c, it is unlikely the legislature meant to add any additional impediments to law enforcement officers seeking an increase where the circumstances appeared to warrant one. In any event, when the legislature decides to impose such a requirement, it knows how to do so. This Court finds no triable issue concerning an alleged violation of Penal Code section 1269c, and no violation of that statute.

Galen also apparently alleges that the County has a policy, custom, or practice of violating Penal Code section 1270.1, which provides:

> Before any person who is arrested for [a violation of Penal Code section 273.5] may be released on bail in an amount that is either more or less than the amount contained in the schedule of bail for the offense ..., a hearing shall be held in open court before a magistrate or judge.

Clearly the opposite is true. The County's policy (as set forth in the Manual) implements the requirements of Penal Code section 810 that arrestees be advised of their right to request a release on their own recognizance or on a reduced bail. It describes the ways in which law enforcement must assist the arrestee in that regard. It advises that information about an arrestee's arrest, family and employment history will be sought by the Probation Department's Bail Deviation Unit. (These are the subjects Galen contends he would have presented in open court that would

have caused the judicial officer to set bail in an amount other then $1,000,000.) The Manual even mandates that watch sergeants give "special attention" to be sure that arrestees are given access to the "Bail Reduction Unit."

Nothing in the Manual encourages law enforcement to seek bail enhancements. The Manual mandates that, among other information, the officer must provide the charge, thus ensuring that the magistrate would be aware that Penal Code section 1270.1 would apply. Galen presents no evidence on the subject of why the magistrate granted the increase in apparent contradiction of the statute, but interpretation of whether the statute applied in this case was properly left to the judicial officer.[6] Penal Code section 1270.1 does not, by its terms, prevent law enforcement from seeking a bail enhancement, nor does it prevent arrestees from seeking a reduction. That section prevents an arrestee from being released on bail other than that set forth in the countywide bail schedule before a hearing in open court.

Even if defendants violated California law—and had a policy that encouraged that practice—violation of state law alone does not support a section 1983 claim. A defendant who violates state law may be found liable under § 1983 only if he or she also violated clearly established federal constitutional or statutory rights. *See Davis*, 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 ("officers sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision"); *Campbell v. Burt*, 141 F.3d 927 (9th Cir.1998) (case worker violated state law but not clearly established federal right). Galen argues in his Supplemental Memorandum that, if the state law at issue creates a liberty interest such that a violation of that law constitutes a violation of due process, the violation may be cognizable under § 1983, citing *Munoz v. Kolender*, 208 F.Supp.2d 1125, (S.D.Cal.2002). Even if *Munoz* applies here, a § 1983 violation could only occur if the statute was intended to benefit plaintiff. *Id.* at 1132. Galen presents his own analysis of the issue, but no legislative history or case law to establish this intent. Certainly a statute that, in part, prevents a decrease in bail or release on "OR" in the absence of certain conditions has the purpose of protecting victims and the public. In any event, this Court has found the statutes have not been violated by law enforcement, so Galen's argument does not assist him.

The County of Los Angeles is not liable.

## V. CONCLUSION

For the reasons stated above, summary judgment is GRANTED in favor of defendants. The complaint is DISMISSED WITH PREJUDICE, and judgment is to be entered forthwith. Defendants are to recover their costs of suit pursuant to a bill of costs filed in accordance with 28 U.S.C. § 1920.

IT IS SO ORDERED.

**Proceedings: ORDER GRANTING DEFENDANTS' MOTION FOR ATTORNEY'S FEES**

## I. PROCEDURAL HISTORY AND FACTUAL BACKGROUND

Having prevailed on their Motion For Summary Judgment filed October 23,

---

**6.** The parameters of Penal Code section 1270.1 are far from clear. In the only case interpreting the statute, *Dant,* 61 Cal.App.4th 380, 71 Cal.Rptr.2d 546, the Court of Appeal basically found that the provision stating that two days notice must be given to the prosecutor before the court could reduce or increase bail (or release the defendant "OR") did not mean that two days notice must be given to the prosecutor. In the face of an imminent risk of harm to the victim, it is unclear that the courts would find that a bail increase could never be granted by the bail commissioner.

2003, Defendants now seek their attorney's fees incurred during the litigation, and in connection with the instant motion. Defendants' Motion For Attorney's Fees Pursuant to 42 U.S.C. § 1988 was filed March 26, 2004. The Opposition of Plaintiff Jeffrey M. Galen to Defendants' Motion for Attorney's Fees Pursuant to 42 U.S.C. § 1988 ("Opp."), Plaintiff Jeffrey M. Galen's Evidentiary Objections Filed in Support of His Opposition, and the Declaration of Alan S. Gutman in Support of Plaintiff Jeffrey M. Galen's Opposition to Defendants' Motion for Attorney's Fees Pursuant to 42 U.S.C. § 1988 were filed April 12, 2004. Defendants' Reply to Plaintiff's Opposition to Motion for Attorney's Fees Pursuant to 42 U.S.C. § 1988, Defendants' Response to Evidentiary Objections Re: Motion For Attorney's Fees, and Declaration of Debra Houston in Support of Defendants' Reply to Plaintiff's Opposition to Motion For Attorney's Fees Pursuant to 42 U.S.C. § 1988 were filed April 19, 2004. Defendants' Notice of Lodging and Declaration of Michael J. Bloch were filed April 23, 2004. The Court heard oral argument on April 26, 2004.

The Court adopts the "Procedural History and Factual Background" portions of its Order Granting Defendants' Motion For Summary Judgment filed January 9, 2004 ("Order").

## II. LEGAL STANDARD

In any action or proceeding to enforce a provision of [42 U.S.C. § 1983] the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs ...." 42 U.S.C. § 1988(b). In *Hughes v. Rowe*, 449 U.S. 5, 14, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980), the Supreme Court adopted for claims under this section the standard it had established in *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978). A defendant may not recover fees unless "the plaintiff's action

was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Id.* Unlike a prevailing plaintiff, a prevailing defendant "should be awarded fees 'not routinely, not simply because he succeeds, but only where the action brought is found to be unreasonable, frivolous, meritless or vexatious.'" *Mayer v. Wedgewood Neighborhood Coalition*, 707 F.2d 1020, 1021 (9th Cir.1983) (citations omitted). This test applies not only to the time the suit is filed, but throughout the litigation. *Christiansburg*, 434 U.S. at 422, 98 S.Ct. 694 (fees may be assessed when plaintiff continued to litigate after the claim clearly became "frivolous unreasonable or groundless").

An action may be considered unfounded where plaintiff failed to pursue discovery essential to establishing his allegations. *See Pierzynowski v. City of Detroit*, 947 F.Supp. 1147, 1149 (E.D.Mich.1996).

That a court has previously denied a motion to dismiss—or even a motion for summary judgment—does not suggest that a prevailing defendant is not entitled to attorney's fees. *Maag v. Wessler*, 944 F.2d 654, 657–58 (9th Cir.1991).

Fees incurred in connection with the fee motion itself are recoverable. *Margolis v. Ryan*, 140 F.3d 850, 854 (9th Cir.1998). Only reasonable fees are permitted and the court must "independently review plaintiff's fee request even absent defense objection." *Gates v. Deukmejian*, 987 F.2d 1392, 1401 (9th Cir.1992).

A court can abuse its discretion by denying fees where an award is appropriate, as well as by granting them where it is not. *Saman v. Robbins*, 173 F.3d 1150, 1157–58 (9th Cir.1999). The amount to be awarded is based on the "lodestar determination" in which the Court calculates the number of hours reasonably spent by each attorney and multiplies their time by a reasonable

hourly rate. *Jordan v. Multnomah County,* 815 F.2d 1258, 1262 (9th Cir.1987).

Finally, a court "should consider the financial resources of the plaintiff in awarding fees to a prevailing defendant." *Miller v. Los Angeles County Board of Education,* 827 F.2d 617, 621 (9th Cir.1987).

## III. ANALYSIS

### A. *Eighth Amendment Claim*

Because Defendants prevailed as to their motion to dismiss Galen's Fourteenth Amendment claim, he proceeded only on the theory that his Eighth Amendment rights had been violated. Galen argues in opposition to Defendants' motion for fees that his claim was not frivolous, etc. because there are no controlling authorities on the issue of what constitutes "excessive" bail. Obviously the Court agrees that what constitutes "excessive" bail is unclear. *See* Order at 9–12. Galen also argues his "constitutional right to be free from excessive bail" is "clearly established." Again, even Defendants do not argue that Galen had no such a right. But Galen's argument that he "was advancing issues of first impression in this district," Opp. at 10, misses the point.[1] Indeed, it establishes *Defendants'* position that the individual defendants *had* to be entitled to qualified immunity (unless, as discussed below, they had deliberately lied to increase Galen's bail to an excessive bail).

While the law concerning "excessive" bail is admittedly sparse or non-existent, the law concerning qualified immunity is not.

Qualified immunity is an entitlement not to go to trial, not merely a defense against liability. *Saucier v. Katz,* 533 U.S. 194, 200, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). It should be decided early in the proceedings. *Id.* It is abundantly clear that analysis of the qualified immunity defense is a two step process. The initial inquiry is whether, on the facts alleged, a constitutional right has been violated. If no such right has been violated, plaintiff cannot prevail. 533 U.S. at 200, 201, 121 S.Ct. 2151. If a violation of a constitutional right does or may exist, the Court must consider whether that right was "clearly established." "Clearly established" means the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." 533 U.S. at 201, 121 S.Ct. 2151, citing *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful *in the situation he confronted.*" *Id.* (emphasis added). In other words, "the right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established." *Wilson v. Layne,* 526 U.S. 603, 615, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999). Although law enforcement officers must be aware of constitutional developments, they are not expected to do so to the same extent as law professors, for example. A "reasonable person" standard applies. *Ward v. San Diego County,* 791 F.2d 1329, 1332 (9th Cir.1986), *cert. denied,* 483 U.S. 1020, 107 S.Ct. 3263, 97 L.Ed.2d 762 (1987).

---

1. Galen's argument that if he cannot raise this issue of first impression "then no criminal defendant could ever bring an excessive bail claim under the Eighth Amendment in this district, and the Eighth Amendment would be rendered meaningless," Opp. at 10, is mistaken. Nothing precludes a criminal defendant from making a novel excessive bail claim, and asking a reviewing court to reverse a judicial officer's finding. The doctrine of qualified immunity, however, does preclude an officer's liability where no reasonable officer could have determined that the bail was excessive (issues of causation aside).

Thus even if Galen's claim that the bail was excessive—and that his Eighth Amendment rights had therefore been violated—had succeeded, Galen would still have to prove that *in this context* a reasonable officer would have known he was violating that right. Galen's "first impression" argument defeats his own claim on this issue. There was admittedly no Supreme Court, Ninth Circuit, California, or other law from which Heinrich and Barrier[2] could have gleaned that the requested bail amount was excessive. Had they (or Galen) attempted to find such law, they would have found federal constitutional law permitting detention, and state law emphasizing the prime consideration of public safety, especially in the context of crimes of domestic violence. As Galen focused repeatedly and exclusively on the absence of flight risk, one can only conclude that he failed to investigate the law, or deliberately failed to address what he knew would be a losing argument in that regard. Had Galen made a reasonable inquiry into the law of qualified immunity[3], he would have discovered Defendants' entitlement *not* to go to trial on these facts. He had to have known the officers would be entitled to qualified immunity unless they had deliberately caused his bail to be excessive by providing false information.

Galen contends there was false information in his file. Galen is correct.[4] Even though the parameters of excessive bail were not clearly established, Galen's pursuit of the litigation would not have been so frivolous, etc. as to merit an award of fees if this false statement had actually caused the significant increase in bail.

Therefore, the Court concludes that initiating the action was not completely frivolous. Galen was required, however, to pursue this issue in discovery rather than proceeding to a trial without evidence, or perhaps hoping for a settlement.

Though the Court cannot determine with precision when Galen should have concluded his case had no merit, it was certainly before Defendants filed their motion for summary judgment. At that point, after conferring with counsel as required by Local Rule 7-3, Galen should have dismissed his suit.

### B. *The Monell Claim*

The County of Los Angeles unquestionably had no liability in the absence of a policy, custom or practice that was the "moving force of the constitutional violation." *Monell v. Department of Social Services*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In other words, there had to be *both* a policy or custom *and* a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *See City of Canton v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

> [I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the "moving force" behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action

---

2. Galen should have discovered early on that Sergeant Barrier had no part in providing any allegedly false information.

3. In opposing the motion for summary judgment, Galen contended he was a recognized expert in the civil rights field.

4. Galen greatly exaggerated the extent of the false information. Only the statement that the victim required medical treatment was false.

and the deprivation of federal rights. [Emphasis in original.]

*Board of County Commissioners of Bryan County v. Brown*, 520 U.S. 397, 404, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997).

But Galen had no evidence of a policy, custom or practice that had either the purpose of encouraging Los Angeles Superior Court judicial officers to set excessive bail *or* the effect of causing that result.

Galen contended without support that the County had a policy, custom, or practice of violating Penal Code section 1270.1, which provides:

> Before any person who is arrested for [a violation of Penal Code section 273.5] may be released on bail in an amount that is either more or less than the amount contained in the schedule of bail for the offense ..., a hearing shall be held in open court before a magistrate or judge.

Clearly the opposite was true. The County's policy (as set forth in the Manual obtained by Galen) implemented the requirements of Penal Code section 810 that arrestees be advised of their right to request a release on their own recognizance or on a reduced bail. Galen provided no evidence of a violation of state law by the County—much less a policy, custom or practice to do so.

Even if the County violated state law—and had a policy that encouraged that practice—violation of state law alone does not support a section 1983 claim. The County's policy, as evidenced by the Manual, was to provide arrestees with information concerning their right to seek a bail reduction from a commissioner. Galen never presented any evidence to the contrary.

Unquestionably, Galen's bail was increased without a hearing in open court. Galen argues that "[w]ithout the commissioner's written findings of fact supporting the enhancement, Galen could not establish by direct evidence the facts relied on by the commissioner in making his determination. Even had Galen been able to determine which facts were conveyed by defendants to the senior aide, or in turn by the senior aide to the commissioner, that would constitute only circumstantial evidence, not direct evidence, of what the commissioner relied upon in increasing bail." Opp. at 11–12.

Galen contends he cannot be "penalized" for being unable to establish fact what facts the commissioner relied on. First, awarding fees to a prevailing defendant is not a "penalty." It is compensation for the cost of defending a frivolous and meritless lawsuit. More importantly, Galen certainly knew that he had the burden of proving his claims. Once he knew he would be unable to meet that burden, he was required to dismiss the suit. *See Christiansburg*, 434 U.S. at 422, 98 S.Ct. 694. Finally, as defendants point out, Galen made no effort to ascertain what information was provided. As he and his counsel obviously understood what was needed to prevail, it was incumbent on him to seek and obtain evidence, if it existed, or cease his pursuit of the County.

Giving Galen the benefit of the doubt, the Court concludes that, knowing that his bail had been increased without a hearing in open court, Galen might have believed that some policy of the County was responsible. However, on learning of the contents of the Manual, and the procedure for obtaining bail increases, Galen should have dismissed his suit. Again the Court cannot tell precisely at what point Galen should have reached this realization, but it was certainly when discovery had been completed and Defendants advised they would bring their summary judgment motion.

### C. *Detective Holland*

Galen made no pretense of having a claim that Detective Holland was responsible for his allegedly excessive bail. Though he did not actively pursue his suit as to her, he did not dismiss her either—even after questioning from the Court as to her status. Defendants have failed to show, however, what specific fees they incurred in defending Detective Holland. Therefore, the Court declines to award fees relating to Galen's suit against Holland.

### D. *Amount of Fee Award*

Though it is highly likely that at least some of the discovery expense was unnecessarily incurred as a result of Galen continuing to pursue the litigation after he must have known it was frivolous,[5] the Court cannot easily discern what amount that might be. The Court declines to award fees for a partially unsuccessful motion to dismiss, for opposing Plaintiff's successful motion to amend, for discovery and for "general administration."[6]

The Court concludes that fees incurred in connection with the motion for summary judgment, and for this motion, should be awarded to Defendants. The Court concludes the sums charged for the legal services rendered in connection with the motions are reasonable.[7] The Court takes judicial notice that fees generally charged by lawyers of equivalent experience and skill (based on the Court's observation of the papers and oral argument) are significantly higher. The Court also concludes

that the number of hours spent is reasonable. The Court disagrees with Galen that there is anything unusual, inappropriate or excessive in the number of different persons assigned to work on this matter. Therefore, the total award to Defendants for the motion for summary judgment is $16,470. Defendants are awarded $6930 for the instant motion.[8] Galen does not contend that even the full amount sought by Defendants would cause him any hardship; the Court finds, based on the information submitted in connection with the motion for summary judgment, that Galen is well able to pay these fees.

## IV. CONCLUSION

For the reasons stated above, Defendants' Motion For Attorney's Fees Pursuant to 42 U.S.C. § 1988 is granted. In addition to the costs previously allowed pursuant to the Order, Galen is to pay to Defendants $23,400 in attorney's fees.

June 1, 2004.

---

5. Because bad faith is not required for an award of attorney's fees, the Court does not address that issue. Suffice it to say there was evidence in the record from which the Court likely could have made such a finding.

6. The Court does not suggest the request for these fees was improper. Rather, under the standards set forth in the case law, it determines they should not be awarded.

7. The Court will exclude, however, fees charged for Defendants' unsuccessful *ex parte* application to submit additional evidence.

8. In addition to this amount, Defendants are entitled to their "traditional" costs for prevailing in the action as noted in the Order.