**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JEFFREY M. GALEN,
        *Plaintiff-Appellant,*

v.

COUNTY OF LOS ANGELES; LOS
ANGELES COUNTY SHERIFF'S
DEPARTMENT; ANNA BARRIER;
MARIAN HOLLAND; GLENN
HEINRICH,
        *Defendants-Appellees.*

No. 04-55274

D.C. No.
CV-02-08115-DSF

JEFFREY M. GALEN,
        *Plaintiff-Appellant,*

v.

COUNTY OF LOS ANGELES; LOS
ANGELES COUNTY SHERIFF'S
DEPARTMENT; ANNA BARRIER;
MARIAN HOLLAND; GLENN
HEINRICH,
        *Defendants-Appellees.*

No. 04-56148

D.C. No.
CV-02-08115-
DSF(Ex)

ORDER
AMENDING
OPINION AND
AMENDED
OPINION

Appeal from the United States District Court
for the Central District of California
Dale S. Fischer, District Judge, Presiding

Argued and Submitted
November 15, 2005—Pasadena, California

Filed November 7, 2006
Amended January 19, 2007

911

Before: Kim McLane Wardlaw and Richard A. Paez,
Circuit Judges, and James K. Singleton,* District Judge.

Opinion by Judge Wardlaw

*The Honorable James K. Singleton, Senior United States District
Judge for the District of Alaska, sitting by designation.

**COUNSEL**

Alan S. Gutman and Elizabeth L. Bradley, Law Offices of Alan S. Gutman, Beverly Hills, California, for the appellant.

John J. Collins, Tomas A. Guterres, Douglas Fee, and Catherine C. Mason, Collins, Collins, Muir & Stewart, LLP, South Pasadena, California, for the appellees.

**ORDER**

The opinion filed November 7, 2006 is amended as follows:

1) Insert the following text at the end of footnote four: "We specifically leave open for another day the question of whether a litigant who actually challenged their bail at the time, or who asserted a procedural due process claim, may be entitled to a burden-shifting presumption, since in the absence of a public record, the Commissioner is uniquely aware of the *ratio decidendi*."

No further petitions for rehearing or petitions for rehearing en banc may be filed.

---

**OPINION**

WARDLAW, Circuit Judge:

In this action pursuant to 42 U.S.C. § 1983, Jeffrey Galen claims that the $1,000,000 bail set upon his arrest for domestic violence was excessive in violation of the Eighth Amendment. He asserts that the district court erred by granting summary judgment in favor of the County of Los Angeles and its officers on the basis of qualified immunity. Because we agree with the district court that Galen failed to adduce evidence that peace officers caused unconstitutionally excessive bail to be set, we affirm the summary judgment. However, we hold that the district court abused its discretion in part in awarding attorneys' fees to the County and its officers.

## I.  Factual and Procedural Background

On the morning of October 26, 2001, Los Angeles County Sheriff's Department Deputies Bausmith and Heinrich arrested Galen at his Encino, California law office on suspicion of violating Penal Code section 273.5, California's domestic violence statute. Sergeant Barrier approved the arrest. The alleged victim, Galen's then-fiancée, previously had sought protection against Galen from sheriff's deputies

and had shown them photographs of injuries she claimed Galen had inflicted on her, including large bruises on her arms and legs and a seven-inch laceration on her upper arm.

After sheriff's deputies booked Galen at the Lost Hills Sheriff Station, Sergeant Barrier and Deputy Bausmith discussed requesting an increase in Galen's bail from $50,000, the default amount for a section 273.5 violation. Sergeant Barrier believed Galen could easily post $50,000 bail because he was an attorney and lived in a "fairly nice house." She knew there previously had been problems between Galen and his fiancée and was concerned Galen "could quite possibly have gone and caused some further physical harm to [his fiancée], or worse," if he were released on bail. Sergeant Barrier's concerns were enhanced by the statement in the Probable Cause Declaration ("PCD") for Galen's arrest, which other deputies involved in the investigation had partially prepared and which Deputy Heinrich later completed, that "the victim was in fear for her safety." Sergeant Barrier, who had never before sought a bail enhancement for a section 273.5 arrestee, wanted bail set high enough to prevent Galen from posting bail.

Deputy Bausmith instructed Deputy Heinrich to fill out a Bail Deviation Form and contact the County Probation Department's Bail Deviation Unit to request an increase in Galen's bail over the default amount. On the Bail Deviation Form, Deputy Heinrich requested that Galen's bail be enhanced to $1,000,000. This enhancement request was based solely on what Deputy Bausmith had told Deputy Heinrich and was intended to ensure the safety of Galen's fiancée. Deputy Heinrich indicated on the form that Galen's offense was likely to continue, that the "[i]njury to [the] victim required medical treatment," and that Galen had waived his bail deviation phone call. Deputy Heinrich had never met Galen's fiancée or seen evidence of her injuries; the information he entered on the form came from Deputy Bausmith, the

PCD, and his own inferences based on the urgency of Galen's arrest.

To request the enhancement, Deputy Heinrich spoke to De'anna English, an aide at the Bail Deviation Unit. Deputy Heinrich related the facts of the case as he understood them from Deputy Bausmith and the PCD. He told the aide that Galen's fiancée feared for her safety and had been vague with sheriff's deputies, that he believed the crime would likely continue if Galen were released, and that Galen was an attorney and could easily post $50,000 bail. Deputy Heinrich also faxed the PCD to the Bail Deviation Unit, but he never provided the Unit with the Bail Deviation Form, nor was a separate PCD ever prepared for the bail enhancement request. The bail aide completed a form in response to Deputy Heinrich's request that included substantially all the information Deputy Heinrich provided her. The record is bereft of any evidence concerning what information the bail aide provided to the Bail Commissioner or what factors went into the Commissioner's decision to enhance Galen's bail.

At noon, Bail Commissioner (now Superior Court Judge) Kelvin Filer set Galen's bail at $1,000,000. Galen already had spoken with his attorney and begun the process of securing bail when he learned that his bail had been enhanced. It was a Friday, and Galen feared he would spend the weekend in jail if he did not post bail immediately. Galen called his lawyer and a bail bond company and obtained a bail bond of $1,000,000 in return for paying a $50,000 premium.

Later, after he had secured bail, Galen was shown the Bail Deviation Form and notified of his right to challenge the enhancement. He signed the form, acknowledging that he had read it and understood he had a right to apply for a bail reduction. Galen was released at 5 p.m. He never requested a bail reduction or otherwise challenged the amount of his bail while in custody. Detective Holland investigated the sus-

pected abuse, but Galen's fiancée, after speaking with Galen, signed a "Request Not To Prosecute." No charges were filed.

In October 2002, Galen filed a complaint in the United States District Court for the Central District of California against the County of Los Angeles, Sergeant Barrier, and Detective Holland, seeking damages under 42 U.S.C. § 1983 for Fourth, Fifth, Eighth, and Fourteenth Amendment violations allegedly resulting from the bail enhancement. Galen also sought damages under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), alleging that the County knowingly maintained a policy or practice of disregarding California bail law in violation of the Eighth Amendment. Galen added Deputy Heinrich as a defendant shortly after filing his complaint and did not actively pursue his suit against Detective Holland.[1]

All claims except the Eighth Amendment excessive bail claim were dismissed on the County's motion. The County then moved for summary judgment, asserting that no constitutional violation had occurred; Sergeant Barrier and Deputy Heinrich did not cause Galen's bail to be enhanced and were entitled to qualified immunity; and the County was not liable under *Monell*. The district court held that Galen's bail was not excessive, and that even if it was excessive, neither Sergeant Barrier nor Deputy Heinrich caused the Eighth Amendment violation and both were entitled to qualified immunity. *Galen v. County of Los Angeles*, 322 F. Supp. 2d 1045, 1051-57 (C.D. Cal. 2004). The court also entered judgment in favor of the County on Galen's *Monell* claim, finding that the County had no policy, custom, or practice designed to ensure or resulting in the setting of excessive bail. *Id.* at 1057-59.

The County subsequently moved for $79,890 in attorneys' fees pursuant to 42 U.S.C. § 1988, alleging that Galen's suit

---

[1]We refer to the County of Los Angeles and its defendant officers collectively as "the County."

had been frivolous. The district court found that it had become clear once discovery was completed that Galen's suit was meritless, and that he should have ceased litigating at that point. *Id.* at 1060-64. The court awarded the County attorneys' fees of $23,400 for the post-discovery period. *Id.* at 1064. Galen timely appeals both the grant of summary judgment on his Eighth Amendment claim against the individual defendants and the award of attorneys' fees. He does not appeal the grant of summary judgment on the *Monell* claim.

## II.   Standard of Review

We review a district court's decision to grant or deny summary judgment based on qualified immunity de novo. *Prison Legal News v. Lehman*, 397 F.3d 692, 698 (9th Cir. 2005). We review a district court's decision to grant attorneys' fees pursuant to 42 U.S.C. § 1988 for an abuse of discretion. *Empress LLC v. City and County of San Francisco*, 419 F.3d 1052, 1057 n.4 (9th Cir. 2005). Legal analysis involved in the decision to grant attorneys' fees is reviewed de novo, while relevant factual findings are reviewed for clear error. *Thomas v. City of Tacoma*, 410 F.3d 644, 647 (9th Cir. 2005).

To withstand summary judgment, Galen must make a showing sufficient to establish a genuine dispute of material fact regarding the existence of the essential elements of his case that he must prove at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 321-23 (1986). Galen must present affirmative evidence to make this showing. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). Bald assertions that genuine issues of material fact exist are insufficient. *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 518 (9th Cir. 1993). A factual dispute is genuine only if a reasonable trier of fact could find in favor of the nonmoving party. *Liberty Lobby*, 477 U.S. at 248. A "mere scintilla of evidence" supporting Galen's position is insufficient to withstand summary judgment. *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005).

## III. Discussion

We affirm the district court's grant of summary judgment to the County. Galen cannot establish that his bail was excessive because there is no evidence of the factors the Commissioner considered in enhancing bail, or of his motive for enhancing bail. Nor is there evidence that Sergeant Barrier or Deputy Heinrich proximately caused the alleged constitutional violation. Moreover, Sergeant Barrier and Deputy Heinrich are entitled to qualified immunity because a reasonable peace officer in their positions would not have understood that his conduct violated the Eighth Amendment. We reverse and remand the award of attorneys' fees because the district court abused its discretion in part in holding that it became obvious upon the completion of discovery that Galen's suit had no merit as to all of the Defendants.

## A. Qualified Immunity

Sergeant Barrier and Deputy Heinrich's assertion of qualified immunity requires us to answer two questions: First, do the facts alleged show that Sergeant Barrier and Deputy Heinrich's conduct violated a constitutional right? Second, was the right Sergeant Barrier and Deputy Heinrich are alleged to have violated clearly established such that a reasonable officer would have understood that he was violating that right? *See Saucier v. Katz*, 533 U.S. 194, 200-02 (2001); *see also Anderson v. Creighton*, 483 U.S. 635, 640 (1987). We must review the two steps of the qualified immunity inquiry in order. *See Motley v. Parks*, 432 F.3d 1072, 1077-78 (9th Cir. 2005) (en banc); *see also Saucier*, 533 U.S. at 201.

"[A] public official is liable under § 1983 only if he *causes* the plaintiff to be subjected to a deprivation of his constitutional rights." *Baker v. McCollan*, 443 U.S. 137, 142 (1979) (internal quotation marks omitted) (emphasis in original). Therefore, to survive the first *Saucier* step, Galen must establish both that his bail was excessive in violation of the Eighth

Amendment and that Sergeant Barrier and Deputy Heinrich actually and proximately caused his bail to be excessive. *See Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988).

## 1.  Excessive Bail

We agree with the district court that Galen has not established a triable issue of fact regarding whether his bail was unconstitutionally excessive because he failed to adduce evidence of the reason for or motive behind the Commissioner's enhancement of bail.

The opening clause of the Eighth Amendment, "Excessive bail shall not be required," is one of the least litigated provisions in the Bill of Rights. *See* Richard S. Frase, *Excessive Prison Sentences, Punishment Goals, and the Eighth Amendment: "Proportionality" Relative to What?*, 89 Minn. L. Rev. 571, 603 (2005). The Supreme Court has directly addressed the Clause only three times since its adoption. *See United States v. Salerno*, 481 U.S. 739 (1987); *Carlson v. Landon*, 342 U.S. 524 (1952); *Stack v. Boyle*, 342 U.S. 1 (1951).[2] We, too, have had few occasions to consider the Clause. *See, e.g.*, *United States v. Motamedi*, 767 F.2d 1403 (9th Cir. 1985). Neither the Supreme Court nor we have held that the Clause is incorporated against the States. *See United States v. Scott*, 450 F.3d 863, 866 n.5 (9th Cir. June 9, 2006), *as amended*. We follow the Supreme Court in "assum[ing]" without deciding that the Clause is incorporated against the States. *Baker*, 443 U.S. at 144 n.3.

In determining whether Galen's Excessive Bail Clause rights were violated, we look to *Salerno*. *Salerno* addressed a constitutional challenge to the Bail Reform Act of 1984 ("BRA"), Pub. L. No. 98-473, 98 Stat. 1837, 1976-87 (codi-

---

[2]Individual Justices have interpreted the Clause in reviewing applications for bail pending appeal. *E.g.*, *Sellers v. United States*, 89 S. Ct. 36 (1968) (Black, J.).

fied at 18 U.S.C. § 3141 *et seq.*). The BRA authorized pretrial detention for noncapital defendants and added protecting the safety of others to the government interests relevant to bail determinations, which federal law historically had limited to preventing flight risk. *See* 18 U.S.C. §§ 3142(c)(1), (e).

In *Salerno*, the district court had denied bail to alleged mafia leaders to protect the public safety. 481 U.S. at 743-44. The defendants brought a facial challenge to the BRA, asserting that the Excessive Bail Clause prohibited the state from detaining them for a noncapital crime without a showing of flight risk. *Id.* at 752. In upholding the BRA, the Court explained that the Clause does not provide a right to bail. *See id.* at 753. It went on to

> reject the proposition that the Eighth Amendment categorically prohibits the government from pursuing . . . admittedly compelling interests [other than preventing flight] through regulation of pretrial release. . . .
>
> . . . .
>
> . . . The only arguable substantive limitation of the Bail Clause is that the Government's proposed conditions of release or detention not be "excessive" in light of the perceived evil. Of course, to determine whether the Government's response is excessive, we must compare that response against the interest the Government seeks to protect by means of that response. Thus, when the Government has admitted that its only interest is in preventing flight, bail must be set by a court at a sum designed to ensure that goal and no more. *Stack v. Boyle*, *supra*. We believe that when Congress has mandated detention on the basis of a compelling interest other than prevention of flight, as it has here, the Eighth Amendment does not require release on bail.

*Id.* at 753-55.

**[1]** *Salerno* makes clear that the Excessive Bail Clause does not bar the state from detaining even noncapital arrestees without bail, or from considering interests other than flight prevention in setting bail. But *Salerno* confirms that the Excessive Bail Clause prevents the imposition of bail conditions that are excessive in light of the valid interests the state seeks to protect by offering bail. *Id.* at 754. *Salerno* is thus consistent with *Stack*, a pre-BRA case that found defendants' bail to be constitutionally excessive because it had been "set at a figure higher than an amount reasonably calculated to fulfill . . . . the purpose of assuring the presence of [the] defendant." *Stack*, 342 U.S. at 5. Because the federal bail statute then in effect prohibited the state from considering interests other than flight prevention in setting bail, the Excessive Bail Clause required bail to be set in an amount designed to prevent flight, and no more. *See id.*; *Salerno*, 481 U.S. at 754.

**[2]** To determine whether the Excessive Bail Clause has been violated, we look to the valid state interests bail is intended to serve for a particular individual and judge whether bail conditions are excessive for the purpose of achieving those interests. The state may not set bail to achieve invalid interests, *see Stack*, 342 U.S. at 5; *Wagenmann v. Adams*, 829 F.2d 196, 213 (1st Cir. 1987) (affirming a finding of excessive bail where the facts established the state had no legitimate interest in setting bail at a level designed to prevent an arrestee from posting bail), nor in an amount that is excessive in relation to the valid interests it seeks to achieve, *see Salerno*, 481 U.S. at 754.

In California, bail determinations are regulated by a comprehensive statutory scheme. Penal Code section 1275 defines the interests that judicial officers are to consider in setting bail:

> (a) In setting, reducing, or denying bail, the judge or magistrate shall take into consideration the protec-

tion of the public, the seriousness of the offense charged, the previous criminal record of the defendant, and the probability of his or her appearing at trial or hearing of the case. The public safety shall be the primary consideration.

In considering the seriousness of the offense charged, the judge or magistrate shall include consideration of the alleged injury to the victim, and alleged threats to the victim or a witness to the crime charged, the alleged use of a firearm or other deadly weapon in the commission of the crime charged, and the alleged use or possession of controlled substances by the defendant.

Moreover, California law specifically authorizes judicial officers "to set bail in an amount that [they] deem[ ] sufficient . . . to assure the protection of a victim . . . of domestic violence." Cal. Penal Code § 1269c. California law requires that noncapital defendants be offered bail. *See* Cal. Penal Code §§ 1270.5, 1271. For noncapital defendants, "the court may neither deny bail nor set it in a sum that is the functional equivalent of no bail." *In re Christie*, 92 Cal. App. 4th 1105, 1109 (Ct. App. 2001), *as modified*.

California also regulates the procedure by which bail is set, requiring an open hearing before a person arrested for any of several serious crimes, including violations of section 273.5, may be released on his own recognizance or on bail in an amount either greater or lesser than the default amount for the offense. Cal. Penal Code § 1270.1(a). Judicial officers setting bail in an amount either greater or less than the default amount must state the reasons for their decision on the record. *Id.* § 1270.1(d).

[3] To prevail on his claim that his bail enhancement violated the Excessive Bail Clause, Galen must show that the Commissioner enhanced his bail for purposes unauthorized by

California law or that the amount of bail was excessive in light of the valid purposes for which it was set. But Galen has failed to produce any evidence regarding the reasons the Commissioner enhanced his bail. The record establishes that Deputy Heinrich spoke to an aide at the Bail Deviation Unit and faxed the PCD to the Unit. Deputy Heinrich communicated a number of facts to the aide, including that Galen's fiancée feared for her safety and had been vague with sheriff's deputies; he believed the crime would likely continue if Galen were released; and Galen was an attorney and could easily post $50,000 bail. However, there is no evidence about which information the aide provided to the Commissioner or what additional information the Commissioner may have received. Nor is there any evidence regarding the Commissioner's decisionmaking process, including the factors he considered in making his bail determination and the factors he ultimately relied on to enhance Galen's bail. There is nothing in the record to indicate that, other than not holding a hearing, the Commissioner failed to follow California laws governing the setting of bail, *see* Cal. Penal Code §§ 1269c, 1275, and so we presume that he did comply with those laws.

**[4]** Because Galen has offered no evidence that would tend to show that the Commissioner enhanced Galen's bail for an improper purpose or that his bail was excessive in light of the purpose for which it was set, he has failed to meet his burden for withstanding summary judgment. *See Salerno*, 481 U.S. at 754; *Wagenmann*, 829 F.2d at 213. We must disagree, however, with the district court's conclusion that as a matter of law Galen's "[b]ail was not excessive," *Galen*, 322 F. Supp. 2d at 1053, for the very same reason: There is no evidentiary basis in the record to conclude one way or the other whether Galen's bail was "excessive" under California law or the Constitution. We also disagree with the district court's suggestion that the fact that Galen posted bail compels a finding that his bail was not excessive. *See id.* at 1055. This conclusion misapprehends the concept of constitutionally excessive bail as developed by the Supreme Court and in our case law. The

plain meaning of "excessive bail" does not require that it be beyond one's means, only that it be greater than necessary to achieve the purposes for which bail is imposed. *See Salerno*, 481 U.S. at 754; *Jennings v. Abrams*, 565 F. Supp. 137, 138 (S.D.N.Y. 1983).

**[5]** The Commissioner's failure to hold a hearing in open court before enhancing Galen's bail and to state his reasons for the enhancement on the record, as required by California Penal Code section 1270.1, does not excuse Galen from his burden of demonstrating in this § 1983 action that his bail was excessive. We will not assume that Galen's bail was excessive simply because the state failed to comply with a self-imposed procedural requirement, particularly where, as here, Galen never requested a hearing before the Commissioner or challenged his bail enhancement in any way before being released from custody.[3] Nor do we accept Galen's argument that procedural violations of California bail law suffice to establish a deprivation of a federal right. Section 1983 requires Galen to demonstrate a violation of federal law, not state law. *See, e.g.*, *Sweaney v. Ada County*, 119 F.3d 1385, 1391 (9th Cir. 1997).[4]

We also reject Galen's argument that flight risk is the only factor the Commissioner was allowed to consider in setting bail, and, accordingly, that his bail was excessive because it exceeded the amount necessary to prevent flight in light of his ties to the community and partial custody of his two school-age children. California law not only authorized, but required, the Commissioner to "take into consideration the protection of

---

[3]The County does not contend that Galen has waived or failed to administratively exhaust his civil rights/excessive bail claim by failing to challenge his bail at the time it was set.

[4]Galen has not raised a procedural due process argument before us. We specifically leave open for another day the question of whether a litigant who actually challenged their bail at the time, or who asserted a procedural due process claim, may be entitled to a burden-shifting presumption, since in the absence of a public record, the Commissioner is uniquely aware of the *ratio decidendi*.

the public, the seriousness of the offense charged, the previous criminal record of the defendant, and the probability of his or her appearing at trial or hearing of the case," Cal. Penal Code § 1275(a), and "to set bail in an amount that he . . . deems sufficient . . . to assure the protection of a victim . . . of domestic violence," *id.* § 1269c. *Salerno* holds that these non-flight-related considerations are permissible and therefore forecloses Galen's argument that his bail was unconstitutionally excessive to the extent it was designed to serve interests other than prevention of flight. 481 U.S. at 754.

Galen's contentions that his bail was excessive simply because it was 2000 percent higher than the default amount for section 273.5 violations, and greater than the default amount for other, more serious crimes, are likewise unavailing. Excessiveness cannot be determined by a general mathematical formula, but rather turns on the correlation between the state interests a judicial officer seeks to protect and the nature and magnitude of the bail conditions imposed in a particular case. *See Salerno*, 481 U.S. at 754. Without examining the relevant state interests, courts cannot determine whether bail conditions are constitutionally excessive. *See id.* Thus in *In re Christie*, the California Court of Appeal remanded to the trial court to articulate specific grounds for its decision to impose bail of 1000 percent of the default amount because the record was insufficient to determine what factors the trial court had considered and therefore whether bail was excessive. 92 Cal. App. 4th at 1109-11.

Galen relies heavily on *Wagenmann*, but *Wagenmann* does not bear the weight Galen places on it. There, the plaintiff met his burden of demonstrating that his bail was set for improper purposes. Law enforcement personnel had prevented Wagenmann from contacting his daughter in the days preceding her wedding to the son of a locally powerful family by arresting him, arranging for excessive bail to keep him imprisoned, and ultimately confining him in a mental institution. *Id.* at 201-05. A jury found by a preponderance of the evidence that a police

officer caused Wagenmann's bail to be unconstitutionally excessive by arranging for bail to be set at $500 when he knew Wagenmann had only $480 on hand, and awarded Wagenmann damages under § 1983. *Id.* at 199, 204. On appeal from the district court's denial of defendants' motions for judgments notwithstanding the verdicts and for new trials, the First Circuit held that in light of the trial court's jury instruction that the purpose of bail was to ensure the presence of the accused at future proceedings, the evidence supported the jury's finding that bail was excessive. *Id.* at 213.

Unlike here, in *Wagenmann* there was sufficient evidence from which a jury could and did find that the sole purpose in setting bail was to prevent Wagenmann from securing his release, not to assure his presence at future court proceedings or to protect the public safety. This was not a "compelling interest," *Salerno*, 481 U.S. at 754, that the state could seek to achieve by imposing onerous bail conditions. Thus, Wagenmann's jury "was certainly warranted in finding that bail—in an amount engineered purposefully to guarantee continued confinement—was excessive." *Wagenmann*, 829 F.2d at 213.

## 2. Causation

[6] Even if Galen could establish that his bail was excessive, the district court correctly concluded that he cannot demonstrate that Sergeant Barrier or Deputy Heinrich were the actual and proximate cause of his bail enhancement, as he is required to do by *Baker*, 443 U.S. at 142, and *Leer*, 844 F.2d at 634. California vests judicial officers with the exclusive authority to enhance or reduce bail. *See* Cal. Penal Code § 1269c. Pursuant to traditional tort law principles of causation, which we apply to § 1983 claims, *see Van Ort v. Estate of Stanewich*, 92 F.3d 831, 837 (9th Cir. 1996), a judicial officer's exercise of independent judgment in the course of his official duties is a superseding cause that breaks the chain of causation linking law enforcement personnel to the officer's

decision, *see Hoffman v. Halden*, 268 F.2d 280, 296-97 (9th Cir. 1959), *overruled in part on other grounds by Cohen v. Norris*, 300 F.2d 24, 29-30 (9th Cir. 1962); Restatement (Second) of Torts § 440. Thus in *Walden v. Carmack*, the Eighth Circuit held that a sheriff could not be liable under § 1983 for violating the plaintiffs' right to be free from excessive bail, even if he recommended a bail amount to the judicial officer who set plaintiffs' bail, because "setting the bail bond is entirely at the discretion of the presiding judge." 156 F.3d 861, 874 (8th Cir. 1998).

**[7]** Sergeant Barrier and Deputy Heinrich can be liable for Galen's allegedly excessive bail only if they prevented the Commissioner from exercising his independent judgment. *See Smiddy v. Varney*, 665 F.2d 261, 266-67 (9th Cir. 1981), *as amended* (police officers may be liable for a falsely imprisoned arrestee's continued detention after a prosecutor charges the arrestee only if they cause the prosecutor to act contrary to his independent judgment); *see also Awabdy v. City of Adelanto*, 368 F.3d 1062, 1067-68 (9th Cir. 2004) (applying *Smiddy*). Thus, to withstand summary judgment, Galen must show that Sergeant Barrier or Deputy Heinrich deliberately or recklessly misled the Commissioner, and that his bail would not have been unconstitutionally excessive but for the officers' misrepresentations. *Cf. Hervey v. Estes*, 65 F.3d 784, 789 (9th Cir. 1995), *as amended* (a § 1983 plaintiff alleging that a peace officer improperly procured a search warrant must establish both that the officer made deliberately or recklessly false statements and that "without the dishonestly included or omitted information[ ] the magistrate would not have issued the warrant."); *Mendocino Envtl. Ctr. v. Mendocino County*, 14 F.3d 457, 463 (9th Cir. 1994).

Galen contends that Sergeant Barrier and Deputy Heinrich deliberately or recklessly misled the Bail Deviation Unit with a number of false representations. These include: (1) Galen's fiancée feared for her safety; (2) she was being very vague with deputies; (3) Heinrich and Barrier knew she was afraid

of Galen; (4) the offense was likely to continue; (5) Galen could easily post $50,000 bail; (6) Galen's fiancée required medical treatment for her injuries; and (7) Galen had waived his bail deviation phone call. Each of these representations, however, is either true or was not made to the Bail Deviation Unit. Moreover, there is no evidence that Sergeant Barrier or Deputy Heinrich conveyed these statements to the Commissioner.

[8] Sergeant Barrier did nothing more than recommend an enhancement during her conversation with Deputy Bausmith. She did not determine the amount of the requested enhancement, and she had no contact with the Bail Deviation Unit. With respect to Deputy Heinrich, there is no evidence that any of the allegedly false representations Galen claims he made reached the Commissioner. Moreover, most of the representations are true, or a reasonable person in Deputy Heinrich's position would have believed them to be true based on the information he received from fellow members of the Sheriff's Department. Galen's fiancée had been vague with deputies investigating Galen's abuse, who believed that she feared for her safety. Deputy Bausmith told Deputy Heinrich that Galen's abuse was likely to continue. And although Deputy Heinrich did not have first-hand knowledge of Galen's fiancée's concerns or of Galen's financial resources, it was reasonable to assume that she was afraid of Galen and that Galen could easily post $50,000 bail. The remaining two allegedly false representations, that Galen's fiancée needed medical treatment for her injuries and that Galen had waived his bail deviation phone call, appeared on the Bail Deviation Form, which was not provided to the Bail Deviation Unit or the Commissioner.[5] Galen therefore cannot establish that Sergeant Barrier or Deputy Heinrich made deliberately or recklessly false statements to the Bail Deviation Unit, much less to the Commissioner, or that such statements were a but-for cause of the Commissioner's decision to enhance Galen's bail.

---

[5] Only the PCD was faxed to the Unit.

Lacking evidence that Sergeant Barrier or Deputy Heinrich misled the Commissioner, Galen emphasizes their desire to have his bail set at a level high enough to prevent him from posting bail. But Sergeant Barrier and Deputy Heinrich could not be the actual and proximate cause of Galen's bail enhancement, no matter how much they desired such a result, unless they recklessly or intentionally misled the Commissioner. *See Hervey*, 65 F.3d at 788-89. Galen also argues that Sergeant Barrier and Deputy Heinrich's conduct here was similar to that of the defendant police officer in *Wagenmann*, where the First Circuit held that the plaintiff had adequately established causation. In *Wagenmann*, however, "a plenitude of evidence was offered to suggest [the police officer's] intimate involvement in the bail decision" and to indicate that the police officer "help[ed] to shape, and exercis[ed] significant influence over, the bail decision." 829 F.2d at 211-12. The police officer spoke directly to the bail commissioner, and the record included evidence of that conversation. *Id.* The evidence thus supported the conclusion that the police officer recklessly disregarded the truth and "shaded [the information he provided the judicial officer] to bring about the outcome which the arresting officer coveted." *Id.* at 212. Here, in contrast, there is no indication that Sergeant Barrier or Deputy Heinrich intentionally or recklessly misled the Commissioner or exerted any influence over his decision.

**[9]** Galen's reliance on *United Steelworkers v. Phelps Dodge Corp.*, 865 F.2d 1539, 1546 (9th Cir. 1989) (en banc), is likewise misplaced. In *Phelps Dodge* we addressed whether metalworkers could survive summary judgment on their § 1983 claim against their employer, state and local governments, and law enforcement officials for conspiracy to violate their right to be free from excessive bail during a strike. *Id.* at 1540, 1547. Our emphasis on the defendants' stated intent to " 'keep [the strikers] off the streets' " was appropriate because the plaintiffs alleged a conspiracy between a corporation and law enforcement officials. *Id.* at 1546. In contrast, in a § 1983 suit where conspiracy is not an issue, intent is not

directly relevant to the causation inquiry. Therefore, the district court did not err in concluding that Galen failed to establish a genuine issue of material fact as to his claim that Sergeant Barrier and Deputy Heinrich caused his bail to be unconstitutionally excessive.

### 3. Clearly Established

**[10]** We further agree with the district court that even if Galen could demonstrate triable issues of fact as to whether his bail was excessive and whether Sergeant Barrier or Deputy Heinrich caused the constitutional injury, the law at the time was not clearly established such that a reasonable peace officer in Sergeant Barrier or Deputy Heinrich's position would have understood that his conduct violated the Eighth Amendment. In deciding whether a right was clearly established, we look to whether the alleged constitutional violation was obvious; whether there were legal authorities declaring the conduct at issue unconstitutional; and whether other sources of regulatory or legal authority sanctioned the challenged practice. *See Wilson v. Layne*, 526 U.S. 603, 615-17 (1999). Galen bears the burden of proving that his allegedly violated rights were clearly established. *See Davis v. Scherer*, 468 U.S. 183, 197 (1984).

**[11]** It was not obvious that Galen's Excessive Bail Clause rights would be violated by the imposition of $1,000,000 bail, even assuming his bail was enhanced to prevent him from posting bail. At the time of the alleged violation, no federal legal authority had held that bail was unconstitutionally excessive in the circumstances presented here, where the public safety, protection of a domestic violence victim, and the seriousness of the crime were all in play. Therefore, a reasonable peace officer would not have understood that recommending a bail enhancement on the additional basis of making it more difficult for Galen to post bail would have violated the Eighth Amendment.

**[12]** In addition, Sergeant Barrier and Deputy Heinrich's conduct was reasonable and complied with California law and local bail procedures. California law specifically directs a peace officer to request a bail enhancement if the "peace officer has reasonable cause to believe that the amount of bail set forth in the schedule of bail for that offense is insufficient . . . to assure the protection of a victim . . . of domestic violence . . . ." Cal. Penal Code § 1269c. The County's Jail Manual provides that requests for bail enhancements should go through the Bail Deviation Unit, which serves to process such requests and present them to a bail commissioner for his discretionary evaluation. L.A. County, L.A. Station Jail Manual, at XVII-1. In this context, state law and local regulations sanctioned Sergeant Barrier and Deputy Heinrich's conduct. *See Wilson*, 526 U.S. at 617 (emphasizing that law enforcement policies sanctioned the challenged conduct in holding that the right at issue was not clearly established). Because the law regarding excessive bail and peace officers' liability for recommending bail enhancements was not clearly established, Sergeant Barrier and Deputy Heinrich are entitled to qualified immunity. *See Saucier*, 533 U.S. at 202.

## B.   Attorneys' Fees

The district court properly awarded attorneys' fees to the County for Galen's post-discovery litigation of his *Monell* claim. But, the district court abused its discretion when it held that Galen's continuing litigation of his claims against the individual defendants was frivolous and awarded attorneys' fees to them for the post-discovery period.

On October 23, 2003, the County filed its motion for summary judgment. The district court had set a discovery cut-off date of November 3, 2003, by which time Galen had deposed Sergeant Barrier and Deputy Heinrich and obtained all the documents from the County that he would obtain. Galen then filed an opposition to the County's motion and continued litigating through January 2004, when the district court granted

summary judgment. The County then moved for attorneys' fees. The district court concluded that by November 2003, when Galen had completed discovery, he should have known that Sergeant Barrier and Deputy Heinrich had not caused his bail to be unconstitutionally excessive, that Sergeant Barrier and Deputy Heinrich were entitled to qualified immunity, and that there was no evidence to support his *Monell* claim. The district court awarded the County attorneys' fees of $23,400 for the post-discovery period, which included litigation of the County's motions for summary judgment and attorneys' fees.

**[13]** A district court may award attorneys' fees pursuant to 42 U.S.C. § 1988 to a prevailing civil rights defendant if the plaintiff's action was "unreasonable, frivolous, meritless, or vexatious." *Vernon v. City of Los Angeles*, 27 F.3d 1385, 1402 (9th Cir. 1994) (internal quotation marks omitted). An action becomes frivolous when the result appears obvious or the arguments are wholly without merit. *See Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978); *see also Hughes v. Rowe*, 449 U.S. 5, 14-15 (1980) (per curiam). A defendant can recover if the plaintiff violates this standard at any point during the litigation, not just at its inception. *See Christiansburg Garment Co.*, 434 U.S. at 422.

**[14]** After the completion of discovery in November 2003, it had become obvious Galen lacked direct evidence demonstrating that Sergeant Barrier or Deputy Heinrich caused his bail to be unconstitutionally excessive or that a reasonable peace officer in the shoes of Sergeant Barrier or Deputy Heinrich would have understood his conduct to violate the Excessive Bail Clause. Galen had failed to uncover evidence indicating that Sergeant Barrier or Deputy Heinrich deliberately or recklessly provided false information to the Bail Deviation Unit. Galen also had not obtained evidence of the information the Commissioner received or the factors he considered in enhancing Galen's bail. For that reason, summary judgment was appropriate. But, that Galen lost at summary judgment does not render his case per se frivolous, unreason-

able, or without foundation. In the absence of controlling Ninth Circuit or Supreme Court authority, and given the First Circuit's decision in *Wagenmann*, which lent support to his argument, Galen's perseverance in his suit was not unreasonable. *See, e.g.*, *Karam v. City of Burbank*, 352 F.3d 1188, 1195 (9th Cir. 2003) ("A case is less likely to be considered frivolous when there is very little case law directly apposite." (internal quotation marks omitted)). In *Taylor AG Industries. v. Pure-Gro*, 54 F.3d 555, 563 (9th Cir. 1995), we considered what it means for a case to be "wholly without merit." There, although the relevant law had been clearly established by the Supreme Court and seven other courts of appeal, we held that plaintiff's claim was not "wholly without merit" and declined to award attorneys' fees. *See id.* Similarly, because we conclude that the law on excessive bail was not clearly established at the time of Galen's claim, Galen did not have reason to know that his case was wholly without merit.

**[15]** The district court did not abuse its discretion, however, in holding that Galen's continuing litigation of his *Monell* claim after the completion of discovery was frivolous. Galen's complaint alleged that the County "knowingly maintained, enforced and applied a policy and practice of regularly departing from the mandates and requirements of" California bail law. To prevail on this claim, Galen was required to establish that the County had a deliberate policy, custom, or practice that was the "moving force" behind the constitutional violation he suffered. *Monell*, 436 U.S. at 694-95; *see also City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (a *Monell* plaintiff must show "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation"). The County may be liable if it fails to properly train peace officers and the "failure to train amounts to deliberate indifference to the rights of persons with whom the [officers] come into contact." *City of Canton*, 489 U.S. at 388.

**[16]** During discovery Galen failed to uncover any evidence indicating that the County had a policy or practice

designed to ensure or resulting in the setting of excessive bail. Nor did he uncover any evidence of failure to train officers in proper bail setting procedures. To the contrary, the County Jail Manual, which directs peace officers to seek bail enhancements through the Bail Deviation Unit, suggests that the County's policies were consistent with state bail law. That in this particular case the Commissioner did not hold a hearing before enhancing Galen's bail or state his reasons for the enhancement on the record, as required by California Penal Code section 1270.1, is not sufficient to establish that the County maintained a policy or practice leading to Excessive Bail Clause violations. Based on the evidence Galen acquired during discovery, it was obvious that he could not meet his burden of demonstrating that the County's deliberate conduct was the moving force behind the alleged constitutional violation. *See Monell*, 436 U.S. at 694-95; *see also Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 404 (1997).

## IV. Conclusion

Based on the foregoing, we AFFIRM the district court's grant of summary judgment. We AFFIRM the award of attorneys' fees to the County, REVERSE the award of attorneys' fees and REMAND to the district court to apportion the attorneys' fees award to conform with our holding. The parties shall bear their own costs on appeal.

**AFFIRMED IN PART; REVERSED IN PART AND REMANDED.**