NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

NOV 8 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| CHRISTOPHER HARBRIDGE,<br><br>  Plaintiff-Appellant,<br><br> v.<br><br>REED, Captain in Charge of Facility-C,<br>CSP-LAC,<br><br>  Defendant-Appellee,<br><br> and<br><br>ARNOLD SCHWARZENEGGER; et al.,<br><br>  Defendants. | No.    22-55861<br><br>D.C. No.<br>2:07-cv-04486-GW-AS<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the Central District of California
George H. Wu, District Judge, Presiding

Argued and Submitted December 7, 2023
San Francisco, California

Before:  COLLINS, FORREST, and SUNG, Circuit Judges.
Dissent by Judge COLLINS.

  Plaintiff-Appellant Christopher Harbridge appeals the district court's grant

---

  [*]   This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

of summary judgment in favor of Defendant-Appellee Reed in Harbridge's state prison 42 U.S.C. § 1983 action alleging First Amendment retaliation. We have jurisdiction under 28 U.S.C. § 1291. We review a district court's grant or denial of summary judgment de novo. *Galen v. County of Los Angeles*, 477 F.3d 652, 658 (9th Cir. 2007). We reverse in part, affirm in part, and remand.

To determine whether a defendant is entitled to qualified immunity, we apply a two-step test: (1) we "ask whether the facts taken in the light most favorable to the plaintiff show that the officer's conduct violated a constitutional right," and (2) we "ask whether the right in question was clearly established at the time of the officer's actions, such that any reasonably well-trained officer would have known that his conduct was unlawful." *Orn v. City of Tacoma*, 949 F.3d 1167, 1174 (9th Cir. 2020). The district court found that there is a genuine dispute of material fact as to whether Reed threatened to transfer Harbridge because he exercised his First Amendment right to file grievances and write complaints about prison staff. But the court concluded that Reed's retaliatory threat was implied, not explicit, and that Reed was entitled to qualified immunity at step 2 because it was not clearly established at the time of Reed's conduct that implicit retaliatory threats violate the First Amendment. Harbridge argues that the district court erred because Reed's retaliatory threat was explicit, and because the law prohibiting retaliatory threats was clearly established. Reed agrees with the district court's reasoning at

2

step 2, but also argues in the alternative that no reasonable jury could find that she made a retaliatory threat that violated Harbridge's First Amendment right and, therefore, she is also entitled to qualified immunity at step 1. Below, we first explain why we disagree with the district court's conclusion that Reed is entitled to qualified immunity at step 2, and then explain why we agree with the district court's denial of qualified immunity at step 1.

1.     To begin, we disagree with the district court's characterization of Reed's statement as merely an implicit threat. According to Harbridge, Reed summoned him into her office, where she was waiting with two other correctional officers, and told him that he had "filed several complaints and written many letters complaining about various procedures and acts of misconduct," that he "must not be very happy," and "therefore she [was] going to transfer [him] to another institution." Reed had the power to transfer Harbridge, and Reed's alleged statement explicitly identified Harbridge's First Amendment activity as the reason that she would transfer him. *Cf. Brodheim v. Cry*, 584 F.3d 1262, 1265–66 (9th Cir. 2009).[1] Viewing the facts in the light most favorable to Harbridge, a

---

[1] In *Brodheim*, we construed a corrections officer's written statement as an implied threat because it only vaguely stated, "I'd also like to warn you to be careful what you write, req[u]est on this form." 584 F.3d at 1265–66, 1270 (alteration in original).

reasonable jury could find that Reed explicitly threatened to transfer Harbridge because he had filed complaints and written letters.[2]

At the time of Reed's alleged conduct, it was clearly established that prison officials may not explicitly threaten to transfer a prisoner in retaliation for their First Amendment protected activities. *Gomez v. Vernon*, 255 F.3d 1118, 1127–28 (9th Cir. 2001). In *Gomez*, we held that a prison official violated a prisoner's First Amendment rights by threatening to transfer him "because of his complaints about the administration of the library"—even though "the transfers never took place." *Id.* We explained that the threats alone were sufficient to support a retaliation claim because it was the threats that caused the chilling effect on the inmate's First Amendment rights. *Id.* at 1127. Thus, *Gomez* clearly established that a prison official violates a prisoner's First Amendment rights by threatening to transfer him because of his complaints. And we have repeatedly recognized that *Gomez* established that proposition. *See, e.g.*, *Rhodes v. Robinson,* 408 F.3d 559, 567–68 (9th Cir. 2005).[3]

---

[2] The district court construed Reed's statement as only an implicit threat to transfer Harbridge if he continued to file grievances and complaints in the future. However, construing the facts in the light most favorable to Harbridge, a reasonable jury could find that Reed's statement also was an explicit threat to transfer Harbridge in retaliation for the grievances and complaints that he had already filed.

[3] Although *Rhodes* was decided in 2005, the conduct which gave rise to the First Amendment retaliation claim occurred in 2000. Accordingly, *Rhodes*'s recognition of precedent establishing that a threat of transfer is sufficient to support a claim of

Although we held in *Gomez* that a threat of transfer, without actual transfer, in response to a prisoner's protected activity constitutes First Amendment retaliation, Reed notes that the officials in that case attempted to transfer the prisoner and argues that a reasonable official would not have understood before 2003 that a retaliatory threat without an attempt to carry out the threat violates the First Amendment. The reasoning of *Gomez*, however, made clear that it was the "threats of transfer" that caused the chilling effect and violated the prisoner's First Amendment rights. 255 F.3d at 1127–28. Additionally, years before the events at issue here, we reversed the grant of summary judgment in favor of defendants on a prisoner's claim that officers threatened him in response to his protected activity, where the prisoner alleged that the officers verbally threatened to remove him from the law library and verbally threatened to discipline him—even though he did not also allege that the officials attempted to carry out those threats. *Valandingham v. Bojorquez*, 866 F.2d 1135, 1141–42 (9th Cir. 1989). Taken together, *Gomez* and *Valandingham* clearly established, before the events of this case, that a prison official violates a prisoner's First Amendment rights by verbally threatening to

First Amendment retaliation in the prison context is relevant in this case. *See Tan Lam v. City of Los Banos*, 976 F.3d 986, 1001–02 (9th Cir. 2020) (citing *Curnow ex rel. Curnow v. Ridgecrest Police*, 952 F.2d 321, 325 & n.*** (9th Cir. 1991)).

5

transfer him in response to his protected activities, even if the official does not attempt to carry out the threat.[4, 5]

2. We turn to Reed's alternative argument that her alleged conduct did not violate the First Amendment. In the prison context, a First Amendment retaliation claim has five elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Brodheim*, 584 F.3d at 1269 (citation omitted). On appeal, Reed

---

[4] "We routinely rely on the intersection of multiple cases when holding that a constitutional right has been clearly established." *Polanco v. Diaz*, 76 F.4th 918, 930 n.8 (9th Cir. 2023) (collecting cases).

[5] The dissent criticizes us for "defin[ing] the applicable law at much too high a level of generality." Dissent at 7. This criticism is unwarranted. We analyze whether the claimed violation was clearly established in order to determine "whether the [government actor] had fair notice that her conduct was unlawful." *Kisela v. Hughes*, 584 U.S. 100, 104. In serving this purpose, the Supreme Court requires that "existing precedent . . . place[] the statutory or constitutional question beyond debate," not that there be a prior case that is "directly on point." *Id.* That standard is met where "'the violative nature of *particular* conduct is clearly established.'" *Mullinex v. Luna*, 577 U.S. 7, 12 (2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)). Here, the particular conduct at issue is explicitly threatening to transfer an inmate in retaliation for protected First Amendment expression. Unlike in the Fourth Amendment context where it can be "difficult for an officer to determine how the relevant legal doctrine, [such as] excessive force, will apply to the factual situation the officer confronts," *id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 205 (2001)), and where the Supreme Court has instructed that "specificity is especially important," *id.*, in the context of retaliatory explicit threats government actors do not need precedent arising in the same factual context to understand the legal bounds of their conduct.

argues only that her alleged threat to transfer Harbridge (1) did not constitute an adverse action and (2) would not chill a person of ordinary firmness from future First Amendment activities.

As discussed above, our precedent establishes that a threat of transfer satisfies the adverse-action requirement for a First Amendment retaliation claim. *See Gomez*, 255 F.3d at 1127. Reed nonetheless argues that she is entitled to summary judgment because Harbridge presented no evidence that Reed knew that a transfer would cause Harbridge "hardship" or that Harbridge would have subjectively considered a transfer to be adverse. Reed, however, cites no authority for the proposition that evidence of such knowledge is required to establish that a threat of transfer is adverse action. We did not require evidence of such knowledge in either *Rhodes*, 408 F.3d 559, or *Gomez*, 255 F.3d 1118.

We also agree with the district court that a reasonable jury could find that Reed's alleged statement would have a chilling effect on a person of ordinary firmness. Viewing the facts in the light most favorable to Harbridge, Reed summoned Harbridge to her office where she and two other corrections officers were waiting, she had the power to transfer Harbridge over his objection, she noted that Harbridge had filed grievances and complaint letters, and then she explicitly stated that she was going to transfer Harbridge because of his protected activity. After Harbridge responded that it is unlawful to retaliate against him for filing

7

complaints and writing letters, Reed denied that she was retaliating. However, Reed did not provide any other explanation for her statement that she was going to transfer him. Nor did she revoke the threatened transfer. Harbridge attests that Reed's conduct had a chilling effect on him, and a reasonable jury could find that Harbridge's subjective chill was objectively reasonable.

Reed asserts that a person of ordinary firmness would not have been chilled by her alleged threat because she did not take any action to effectuate the transfer and therefore, any harm Harbridge experienced was "no more than minimal." Reed ignores, however, that "a retaliation claim may assert an injury no more tangible than a chilling effect on First Amendment rights." *Gomez*, 255 F.3d at 1127 (citing *Hines v. Gomez*, 108 F.3d 265, 269 (9th Cir. 1997)). "[T]he mere threat of harm can be an adverse action, regardless of whether it is carried out because the threat itself can have a chilling effect." *Brodheim*, 584 F.3d at 1270 (discussing *Gomez*, *Hines*, and *Rhodes*). "The power of a threat lies not in any negative actions eventually taken, but in the apprehension it creates in the recipient of the threat." *Id.* at 1271.

Reed also points to certain contextual facts that might persuade a jury to find that her alleged threat would not have chilled a person of ordinary firmness. For example, in Reed's view, her actions as a member of the prison's Institutional Classification Committee and Unit Classification Committee regarding Harbridge

could be viewed as "largely positive." But because Reed moved for summary judgment, we must view the facts in the light most favorable to Harbridge, not Reed. Doing so, we conclude that a reasonable jury could find that Reed explicitly threatened to transfer Harbridge because he had filed grievances and complaint letters, and that this threat had a chilling effect. Consequently, Reed is not entitled to summary judgment on the First Amendment retaliation claim.

**AFFIRMED in part; REVERSED in part; and REMANDED.**[6]

---

[6] Reed shall bear all costs on appeal. Fed. R. App. P. 39(a)(4).

FILED

NOV 8 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

COLLINS, Circuit Judge, dissenting:

I disagree with the majority's decision reversing the district court's grant of summary judgment to the defendant on qualified immunity grounds. I therefore respectfully dissent.

This case involves an incident that occurred more than 20 years ago, on October 21, 2003. Plaintiff Christopher Harbridge, then an inmate at a California state prison in northern Los Angeles County, asserts that he was summoned to a meeting at the office of Defendant S.L. Reed, who was a facility Captain at the prison. Harbridge contends that, in the presence of two other officers, Reed told him that she "noted that [he] ha[d] filed several complaints and written many letters complaining about various procedures and acts of misconduct" at the prison; that it therefore appeared that he "must not be very happy here"; and that she therefore was "going to transfer [him] to another institution." Harbridge claims that he responded that he "appreciate[d]" that Reed was "concerned about [his] happiness," but that he was "entitled" not to be happy, because "after all this is prison." According to Harbridge, he also stated that "transferring me as retaliation for exercising my rights to file complaints and write letters is a due process violation." Harbridge states that Reed then responded, "I am not retaliating." Harbridge asserts that he reminded Reed that moving him to another institution

would make it difficult for his father to continue visiting him, due to his father's "documented medical hardship."[1]  It is undisputed that no such transfer occurred and that Harbridge remained at that prison for an additional two years, until his entire housing unit was converted for other use and all of the prisoners in that unit were transferred.  Harbridge nonetheless asserts that, although he continued to file complaints, he was more careful about doing so and that he reduced the amount of material he published to people outside the prison.

To assert a First Amendment claim for retaliation based on these facts, Harbridge must establish "five basic elements: (1) . . . that [Reed] took some adverse action against [him] (2) because of (3) [his] protected conduct, and that such action (4) chilled [his] exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."  *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005) (footnote omitted).  To satisfy the causation element, Harbridge "must show that his protected conduct was the substantial or motivating factor behind the defendant's conduct."  *Brodheim v. Cry*, 584 F.3d 1262, 1271 (9th Cir. 2009) (simplified).  Whether the asserted retaliation had a chilling effect is assessed under an objective standard that requires a showing that the alleged retaliation "would chill or silence a person of ordinary firmness

---

[1] Reed, for her part, denies entirely that any such meeting took place.  Because this case arises from a grant of summary judgment to Reed, we must accept Harbridge's version of events as true.

2

from future First Amendment activities." *Id*. (emphasis omitted) (citation omitted).

But in addition to establishing these elements of a First Amendment retaliation claim, Harbridge must also defeat Reed's assertion of qualified immunity by showing that "the unlawfulness of [Reed's] conduct was 'clearly established at the time.'" *District of Columbia v. Wesby*, 583 U.S. 48, 62–63 (2018) (citation omitted). "A right is clearly established when it is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)). For a right to have been "clearly established," it must have had a "sufficiently clear foundation" in precedent at the time of the challenged conduct. *Wesby*, 583 U.S. at 63. This typically means that then-existing precedent must have "clearly prohibit[ed] the officer's conduct in the particular circumstances before him," *id*., but general rules may suffice to clearly establish the illegality of an officer's action in an "obvious case," *Kisela v. Hughes*, 584 U.S. 100, 105 (2018) (citation omitted).

There is an additional wrinkle here, however. As noted earlier, a key element of a retaliation claim is a showing that the official acted with a retaliatory subjective motive. But because qualified immunity is an "objective inquiry," the "qualified immunity inquiry should concentrate on the objective aspects of the constitutional standard," and that remains true "even where the clearly established

3

legal standard" includes a subjective element. *Sandoval v. County of San Diego*, 985 F.3d 657, 673 (9th Cir. 2021) (simplified) (so holding in the context of a "subjective deliberate indifference" claim); *see also id*. at 674 (stating that "the qualified immunity analysis remains objective even when the constitutional claim at issue involves subjective elements"). Accordingly, the relevant question here is whether Reed's *objective* conduct was such that "every reasonable official would have understood that what [s]he is doing violates that right." *Rivas-Villegas*, 595 U.S. at 5 (quoting *Mullenix*, 577 U.S. at 11).

In this case, the only objective conduct of Reed that could be characterized as an "adverse action" consists of the words she stated to Harbridge during their brief meeting—*i.e.*, the alleged retaliatory threat itself. It has been noted in other contexts that a "threat" includes both an objective and a subjective component: a statement is not a threat unless "a reasonable person hearing or observing [it] would foresee that [it] would be interpreted" as an unlawful threat *and* the threat was made with the requisite culpable mental state. *See United States v. Ehmer*, 87 F.4th 1073, 1121 (9th Cir. 2023) (making this point with respect to threats of violence). An additional objective element that applies to the particular claim here is that the alleged "threat" must be one that would "chill or silence a person of ordinary firmness from future First Amendment activities." *Brodheim*, 584 F.3d at 1271 (emphasis omitted) (citation omitted). The question, then, is whether the

4

existing caselaw in October 2003 was sufficient to make clear to "every reasonable official" that *Reed's words* would objectively be viewed as a retaliatory threat and that her words would chill a person of ordinary firmness. *Rivas-Villegas*, 595 U.S. at 5 (quoting *Mullenix*, 577 U.S. at 11).

The answer to that question is no. Even as recounted by Harbridge, Reed's words were that Harbridge's numerous complaints indicated considerable unhappiness at that particular prison and that she therefore planned to transfer him to another institution. Harbridge then objected that he did not want to be transferred because of his father's situation and that a transfer would amount to retaliation. Reed then denied that she was retaliating. There is no case authority from 2003 or earlier that would make clear to "every reasonable official" that such comments would be objectively viewed as a retaliatory threat and that they would chill a person of ordinary firmness. *Rivas-Villegas*, 595 U.S. at 5 (quoting *Mullenix*, 577 U.S. at 11). On the contrary, the two cases involving verbal threats cited by the majority are ones in which clear language or actions objectively linked protected conduct to an adverse consequence in a way that every reasonable official would understand was prohibited. *See Gomez v. Vernon*, 255 F.3d 1118, 1123, 1127 (9th Cir. 2001) (noting that one prisoner received "repeated threats of transfer because of his complaints about the administration of the library" and that a prison "Disciplinary Hearing Officer threatened to confine and discipline another

5

inmate, Wayne Olds, if in line with his standard duties as a law clerk, he helped an inmate prepare for a disciplinary hearing"); *Valandingham v. Bojorquez*, 866 F.2d 1135, 1141 (9th Cir. 1989) (noting that the inmate "was threatened with disciplinary action if he received affidavits from other inmates," was threatened with "remov[al] from the law library" if he did not stop "attempting to obtain affidavits from other inmates," and was told that if he "helped" another particular inmate "in any way" he "would receive a disciplinary report"). Neither case suffices to make clear to every reasonable officer that it is an objective threat, sufficient to chill a person of ordinary firmness, for a prison official to propose a transfer based on the discontent expressed by an inmate's filing of multiple grievances. *See Sandoval*, 985 F.3d at 674 (stating that the qualified immunity inquiry "compares the factual circumstances faced by the defendant to the factual circumstances of prior cases to determine whether the decisions in the earlier cases would have made clear to the defendant that his conduct violated the law").

The majority's decision to nonetheless deny qualified immunity rests on two key errors. First, the majority relies on a number of decisions that postdate the 2003 incident at issue here, even suggesting at one point that a post-incident decision is relevant to the qualified immunity inquiry if its underlying facts occurred pre-incident. *See* Memo. Dispo. at 4–5 & n.3. But the Supreme Court has squarely held that decisions that are "decided after the [incident] at issue" are

6

"of no use in the clearly established inquiry" because "a reasonable officer is not required to foresee judicial decisions that do not yet exist." *Kisela*, 584 U.S. at 107 (citation omitted). Second, the majority concludes that Reed violated the "clearly established" law "that a prison official violates a prisoner's First Amendment rights by threatening to transfer him *because* of his complaints." *See* Memo. Dispo. at 4 (emphasis added). But this defines the applicable law at much too high a level of generality, in contravention of clear Supreme Court authority. *See Kisela*, 584 U.S. at 104 ("Th[e] [Supreme] Court has repeatedly told courts—and the Ninth Circuit in particular—not to define clearly established law at a high level of generality." (simplified)). In nonetheless defending its high level of generality, the majority underscores that officers who subjectively retaliate do "not need precedent arising in the same factual context to understand the legal bounds of their conduct." *See* Memo. Dispo. at 6 n.5. But this erroneously places dispositive weight on the subjective element of the retaliation claim and fails to "concentrate on the objective aspects of the constitutional standard." *Sandoval*, 985 F.3d at 672 (simplified). Under the proper, objective analysis, our precedent in 2003 did not make clear to every reasonable official that Reed's words would be viewed as a retaliatory threat and that her words would chill a person of ordinary firmness.

Accordingly, I would affirm the district court's grant of summary judgment to Reed on qualified immunity grounds. I respectfully dissent.

7